**Ivonne MARTIN, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant.**

Civ. A. No. 82–2066.

United States District Court, District of Columbia.

April 26, 1983.

As Amended May 24, 1983.

Irving Starr, Arlington, Va., for plaintiff.

George U. Carneal, Patricia A. Brannan, Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on the motion of the defendant, Pan American World Airways, Inc. ("Pan Am") for summary judgment. Pan Am argues that plaintiff's action to recover damages for the value of luggage and its contents lost while plaintiff was traveling on a Pan Am flight from Miami, Florida to Buenos Aires, Argentina cannot be maintained for two reasons. First, Pan Am argues that it has already paid the full amount for which it is liable pursuant to the provisions of the Warsaw Convention and applicable Civil Aeronautics Board tariffs. Second, Pan Am argues that plaintiff's subrogee negotiated a full settlement of plaintiff's claim with Pan Am and subsequently endorsed and deposited a check from Pan Am, thereby releasing Pan Am from further liability. For the reasons set forth below, defendant's motion for summary judgment is granted.

*Facts*

On December 20, 1980, plaintiff, Ivonne Martin, embarked on a flight from Washington, D.C. to Buenos Aires, Argentina. Plaintiff's travel originated in Washington, D.C. on flight number 355 to Miami, Florida. In Washington, plaintiff checked three pieces of baggage to Miami. In Miami, plaintiff picked up her luggage, to ensure that it would be rechecked through to Buenos Aires. She subsequently presented her baggage at the Pan Am desk of Miami Airport, to be checked aboard her international flight to Buenos Aires.

Pan Am's baggage handler received her bags, and issued claims checks to Martin. The baggage handler then tagged the bags.

However, he placed one baggage tag on one bag, two tags on a second bag, and no tag on Martin's third bag. In addition, he neglected to record the weight of the bags on plaintiff's baggage claim.[1]

Plaintiff states that she noticed that the baggage handler had failed to tag her third bag, and brought this to his attention. She states further that he replied that he had tagged the bag, and permitted it to disappear up the conveyor belt without checking into it further.

Martin did not declare or pay for excess valuation on the personal property contained in her luggage, nor did she request that her luggage receive special handling because of its value. In addition, plaintiff's ticket set forth the conditions of carriage of the Warsaw Convention, including the limited liability provisions of the Convention.

When plaintiff arrived in Buenos Aires, Argentina, she discovered that one piece of luggage was missing. She alleges that the luggage contained clothes, perfume, and jewelry worth approximately $16,000.[2] Plaintiff also claims that the luggage contained a title to property which she owns in Buenos Aires. Plaintiff seeks $50,000 in compensatory damages for the loss of the title.

The luggage has never been located by Pan Am. Plaintiff received $2,000 for the loss under the provisions of a transportation-floater insurance policy held by her employer, the Inter-American Development Bank. This policy was issued by the Insurance Company of North America, ("INA"). INA's rights to subrogation against Pan Am were then assigned to its adjuster, Recovery Services International, Inc. ("RSI").

RSI filed a claim with Pan Am seeking $2,000. Pan Am ultimately paid RSI $540, and RSI endorsed and deposited the check. Pan Am argues that the amount paid, $540, represents the full amount for which it is liable under the terms of the Warsaw Convention, and that plaintiff cannot seek further recovery.[3]

On July 26, 1982, Martin brought this complaint alleging breach of contract, breach of bailment, negligence, and conversion. Martin alleges that Pan Am negligently lost her baggage, and failed to tag and weigh the baggage. Martin alleges that these crucial omissions remove Pan Am from the protection of the limited liability provisions of the Warsaw Convention, and that Pan Am is liable for the full amount of the damages claimed.

*Discussion*

Defendant has moved for summary judgment on two separate grounds. First, Pan Am argues that it has paid to plaintiff's subrogee the full amount to which plaintiff could be entitled under the terms of the Warsaw Convention. Second, Pan Am argues that plaintiff's subrogee negotiated a full settlement of plaintiff's claim with Pan Am and subsequently endorsed and deposited a settlement check from Pan Am, thereby settling the claim and relieving Pan Am from further liability.

Because the court finds that the provisions of the Warsaw Convention limit Pan Am's liability for the loss of Martin's luggage, this court has no occasion to consider Pan Am's alternate argument.

The amount to which an airline may be liable for the loss, delay, or damage to baggage on international flights is express-

---

1. Pan Am does not allege that it weighed Martin's bag, or that it tagged plaintiff's third bag. For purposes of this motion, this court must view the facts in the light most favorable to the non-movant.

2. Plaintiff originally estimated the value of the items in her luggage at $10,000. *See* Defendant's Mem. Attach. 3.

3. Pan American computed its liability by applying C.A.B. Tariff Rule 55(c). The tariff provides for recovery of $20.00 per kilo per piece of luggage. In the absence of a weight recordation on the baggage check, the weight of each piece of baggage is deemed to be the maximum allowable weight. The tariff provided for a maximum weight of 70 lbs, or 32 kilos. Pan American's liability was, therefore, $640.00. Because Pan American had given plaintiff an

ly limited by the terms of the Warsaw Convention.[4] The Convention provides:

> In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to the sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires.

Article 22(2); 49 U.S.C. § 1502. The Warsaw Convention applies to the international flight at issue here, and Pan Am argues that Article 22(2) limits its liability for lost luggage to $20.00 per kilogram, or $9.07 per lb. Since Pan Am has paid the amount of its liability under the Convention, and because plaintiff did not declare excess valuation on her luggage, Pan Am argues that it has no further liability and that summary judgment is appropriate.

Plaintiff agrees that the provisions of the Warsaw Convention apply to the flight, but argues that Pan Am is not entitled to take advantage of the limited liability provisions of the Convention. Plaintiff raises three objections to Pan Am's invocation of the Convention. First, plaintiff alleges that Pan Am neglected to place a baggage tag on the missing bag and that the bag is therefore not "checked baggage" within the meaning of Article 22(2). Second, plaintiff argues that Pan Am's failure to record the weight of the bags as required by Article 4(3)(f) of the Convention denies Pan Am the benefit of the limited liability provisions of the Convention. Finally, plaintiff alleges that the ticket agent ignored her request to ticket her third bag despite her request that he do so. Plaintiff alleges that this action constitutes wilful misconduct within the meaning of Article 25 of the Convention, and therefore removes Pan Am's entitlement to limit its liability for lost baggage.

Because Pan American had given plaintiff an advance of $100.00, Pan Am's remaining liability was computed to be $540.00.

## A. Checked Baggage

When plaintiff presented her baggage at Miami Airport to be checked aboard her flight, Pan Am's baggage handler attached one baggage tag to one of plaintiff's suitcases, and two tags to another. However, he failed to attach a tag to the third, and subsequently missing, bag. Plaintiff stated that this "act of negligence operates to remove Plaintiff's claim from the dictates of the Warsaw Convention." Plaintiff's Mem. at 1. The court does not agree that Pan Am's failure to attach a baggage tag to the suitcase negates the application of the Convention.

Pan Am did deliver a baggage claim to the plaintiff and accepted her luggage. Article 18 of the Warsaw Convention provides in pertinent part:

> (1) The carrier shall be liable for damages sustained in the event of the destruction or loss of, or of damages to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

The court finds that the baggage, received by the airline and for which a baggage check has been issued, constitutes "checked baggage" subject to the Warsaw Convention, despite the airline's failure to fasten a tag to the piece of baggage. If a check has been issued to the passenger, the airline has accepted the luggage. The check is the means of checking, or regulating something. In this case, it is baggage. The baggage tag itself helps to identify the baggage, and to alert the handlers of the destination and flight. But its affixation is not required to "check" the baggage. Checking clearly occurs when Pan Am takes possession of the defendant's baggage and issues a receipt. When the luggage is taken from Martin, and she can retrieve it only when she arrives at her destination, the airline's rights and obligations for the baggage attach. The fact that a tag is not attached does not make the baggage "un-

4. Convention Relating to Air Transportation, concluded at Warsaw, October 12, 1929. 49 Stat. 3000 (1929); T.S. 876; 49 U.S.C. § 1502.

checked" nor does it affect the airline's duties under the Convention.

This reading of the Convention is reinforced by the language of Article 4(4). That article provides, "for the transportation of baggage ... the carrier must deliver a baggage check." The Article does not require that each bag be tagged to be checked or registered baggage within the Convention. Whether or not a tag is affixed to a particular bag, the luggage has been processed, or "checked" when a baggage check is delivered. Plaintiff's argument is, therefore, rejected.

### B. *Weight of the Luggage*

Plaintiff argues, in the alternative, that defendant has removed itself from the limited liability conferred by the Convention by failing to weigh her luggage. The Warsaw Convention provides that a baggage claim must contain "the number and weight of the packages." Article 4(3)(f). Article 4(4) states that a carrier that accepts luggage that does not contain the particulars set forth in that Article "shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability."

Several courts have applied the language of the Convention under facts analogous to those at issue here and have found that an airline failing to weigh a passenger's luggage may not claim limited liability under the Convention. *See Maghsoudi v. Pan American World Airways, Inc.,* 470 F.Supp. 1275, 1278–1280 (D.Haw.1979); *Kupferman v. Pakistan International Airlines,* 438 N.Y. S.2d 189, 191–92, 108 Misc.2d 485 (N.Y.Civ. Ct.1981); *Hill v. Eastern Airlines, Inc.,* 425

N.Y.S.2d 715, 716, 103 Misc. 306 (N.Y.Civ. Ct.1980).[5]

However this court does not find this authority, which bases its holding on a literal reading of the record keeping provisions of the Convention, controlling under the facts before it. The primary purpose of the Warsaw Convention is to limit the potential liability of international air carriers. *See* Lowenfeld & Mendelsohn, *The United States and the Warsaw Convention,* 80 Harv.L.Rev. 497, 499 (1967).[6] This was accomplished by establishing limits on the amounts to which an airline would be liable for personal injury and property loss.

Although improvements in baggage handling security and in the airline's competitive posture have eroded this need to some extent, the limited liability provisions of the Convention remain intact. The court must follow the fundamental principle that a treaty, whether construed strictly, or liberally, must be interpreted to effectuate its evident purpose. *See Bacardi Corp. v. Domenech,* 311 U.S. 150, 163, 61 S.Ct. 219, 225, 85 L.Ed. 98 (1940). As noted by one court in a case establishing general guidelines for interpreting the Warsaw Convention

The language of the provision that is to be interpreted is, of course, highly relevant to this inquiry but it should never become a "verbal prison." Other considerations, such as the court's sense of the conditions that existed when the language of the provision was adopted, its awareness of the mischief the provision was meant to remedy, and the legislative history available to it, are also relevant to discern and articulate the provision's pur-

---

**5.** *See also Greeley v. KLM Dutch Airlines,* 85 F.R.D. 697, 700 (S.D.N.Y.1980) (airline failing to comply with baggage check provisions of Article 4 cannot thereafter rely on limited liability provisions of Article 22(2)) (dicta).

**6.** Secretary of State Cordell Hull, in transmitting the Warsaw Convention to the United States Senate in 1934, stated

It is believed that the principle of limitation of liability will not only be beneficial to passengers and shippers as affording a more definite basis of recovery and as tending to lessen litigation, but that it will prove to be

an aid in the development of international air transportation, as such limitation will afford the carrier a more definite and equitable basis on which to obtain insurance rates, with the probable result that there would eventually be a reduction of operating expenses for the carrier.

Senate Comm. on Foreign Relations, Message from the President of the United States Transmitting a Convention for the Unification of Certain Rules, Sen.Exec.Doc. No. G, 73d Cong., 2d Sess. 3–4 (1934).

pose.... It would be inconsistent with the "wise counsel to reject 'tyranny of literalness,'" if the court in the latter situations did not seek to interpret the provision so as to effectuate its purpose, even if this requires departing in some measure from the letter and reading the language in a practical rather than literal fashion. (Citations omitted).

*Eck v. United Arab Airlines, Inc.,* 360 F.2d 804, 812 (2d Cir.1966). *See also Reed v. Wiser,* 555 F.2d 1079, 1087–89 (2d Cir.1977), *cert. denied,* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1978).

The treaty should, therefore, be interpreted to effectuate its evident purpose, and the weight requirement at issue here must be interpreted in light of that purpose. There are two obvious ways in which the weight requirement furthers the intent of the Convention. The most obvious purpose of the weight requirement is to fix the amount of liability if luggage is lost, and to afford a definite basis for passengers to recover damages. In the absence of such a notation, a passenger would be unable to assert a claim under the Convention, because her recovery is based upon the weight of the luggage.

However, this function is not undermined under these facts. Plaintiff stated in a Pan American "Baggage Claim Form" executed by her soon after the loss, that the missing baggage weighed between 30 and 35 pounds. There is no dispute as to the approximate weight of the bag. Yet Martin argues that because the baggage handler neglected to record the precise weight of the baggage, she should be permitted to hold Pan American liable for the full value of her luggage.

The court finds plaintiff's request to be contrary to the primary purpose of the Warsaw Convention, and the limited liability provisions central to the Convention. This court believes that the Civil Aeronautics Board Tariff, Rule 55(c)(3) Note 3 properly supplements Convention Article 4, and represents an appropriate accommodation of the need to preserve limited liability for property damage, and the need to ensure

some means of fixing the amount of liability. That tariff provides:

> For purposes of determining liability under the Convention with respect to passenger baggage ..., the weight of each piece of such baggage shall be deemed to be the maximum allowable weight for each piece of such baggage under the Rule, unless the actual weight is stated on the baggage check.

If Pan American neglects to weigh the baggage, but the approximate weight of the baggage is otherwise available or agreed to, this court can find no commercially justifiable reason to hold Pan American liable for the full amount of plaintiff's claim. The court finds, however, that when Pan American neglects to weigh baggage, its tariff requires it to apply the maximum weight allowance for a particular piece of luggage in determining its liability under the Convention. The airline is penalized under the tariff for its failure to weigh the baggage. This penalty is equal to the difference between the actual or estimated weight of the baggage and the maximum weight allowance. The tariff provides an alternative means of fixing the amount of liability, and the record keeping purpose of the weight requirement is satisfied.

A second function of the weight requirement is to ensure that a passenger is aware of the weight of the luggage, so that she may determine whether she should purchase additional insurance. *See Maghsoudi* at 1279. However, that function is not undermined either. Plaintiff was aware of the approximate weight of her luggage, and she was on notice of the limited liability provisions of the Convention. Accordingly, she had the information necessary to make a rational decision concerning her need for insurance. In addition, in light of the large number of valuable items plaintiff alleges were contained in the missing suitcase, the plaintiff cannot easily argue that the airline's failure to record the weight of her luggage deprived her of adequate notice of her need to procure additional insurance. The weight notation would have specified a precise amount of liability, but within a

range of nominal amounts. Even in the absence of a weight notation, plaintiff must have realized that the airline's liability would be far less than the value of the contents of her luggage. Therefore, the airline's failure to record the weight did not impede plaintiff's opportunity to make a reasoned decision concerning insurance.

■ The court concludes that the airline's failure to record the weight of Martin's luggage is a technical and insubstantial omission which did not prejudice Martin, and which should not act to extend the airline's liability beyond the limits set forth in the Warsaw Convention.[7] Martin was an experienced traveler, traveling with valuables allegedly worth $16,000. It is well understood by air travelers that separate insurance is available to cover the risks of loss of luggage. And, the passenger was fully advised of the limited liability provisions of the Convention. Martin could elect to take the risk of excess damage, or she could insure. Insurance charges are nominal. She chose not to insure. It is not important that Martin failed to take out insurance, what is important is that she knew of the liability limits, and had an opportunity to do so. The court cannot find therefore, that Pan Am is liable for the full amount of plaintiff's loss. Pan Am is under an obligation to accept and transport plaintiff's luggage, and is strictly liable for loss. In return, Pan Am is provided with limited liability as set forth in the Convention. If this court adopted plaintiff's argument it would disrupt the balance of economic risks set forth in the Convention. The court declines to do so.

## C. Wilful Misconduct

At oral argument, plaintiff raised a third objection to defendant's motion for summary judgment. Plaintiff alleged that a genuine issue of material fact exists with respect to whether Pan Am engaged in "wilful misconduct" within the meaning of Article 25 of the Convention. Article 25 provides that the "carrier shall not be able to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct." Plaintiff alleges that such misconduct occurred when the baggage handler refused to check to see whether plaintiff's third bag had been tagged, despite plaintiff's request that he do so.

■ This court concludes that plaintiff's allegations, even when the accuracy of the facts alleged are assumed, are insufficient to constitute wilful misconduct. Article 25 of the Convention has been invoked successfully to impose unlimited liability in a very few cases. See Delgado v. Pan American World Airways, Inc., 16 Avi. 18,462, 18,467 (P.R.1980); Cohen v. Varig Airlines, 15 Avi. 17,112 (N.Y.Sup.Ct.1978). The Warsaw Convention participants carefully constructed a restrictive standard of liability. See Note, Aviation Law: Attempts to Circumvent the Limitations of Liability Imposed on Injured Passengers by the Warsaw Convention, 54 Chi-Kent L.Rev. 851, 861 (1978).

The requirement of wilful misconduct is a "conscious intent to do or omit from doing an act from which harm results to another, or an intentional omission of a manifest duty. There must be a realization of the probability of injury from the conduct, and a disregard of the probable consequences of such conduct." Grey v. American Airlines, Inc., 227 F.2d 282, 285 (2d Cir.1955), cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956). See also Cohen v. Varig Airlines, supra, at 17, 112; Danziger v. Air Force, 16 Avi. 17,261, 17,265 (S.D.N.Y.1979).

Although defendant's conduct indicates that a genuine issue of material fact may

---

**7.** See also Grey v. American Airlines, 227 F.2d 282 (2d Cir.1955), cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956). In Grey, the airline had failed to make specific reference on the passenger ticket to the intermediate "agreed stopping places" of the flight as required by Article 3 of the Convention. The court found that the airline was nevertheless entitled to claim the benefit of the limited provisions of the Convention. The court of appeals found that the trial court properly concluded that the record keeping requirement embodied in that article was a technical and minor one, the omission of which would not affect its liability under the Convention. Id. at 284.

exist as to possible negligence on the part of the baggage handler, it does not indicate wilful misconduct. The circumstances alleged by plaintiff do not suggest that the baggage handler realized some probability of injury arising out of his conduct, and intentionally disregarded the consequences of such conduct.[8]

Accordingly, the court finds that plaintiff's final argument must be rejected. Defendant's motion for summary judgment is, therefore, granted. An appropriate Judgment accompanies this Memorandum.

## JUDGMENT

This matter came before the court on defendant's motion for summary judgment. After reviewing the defendant's memorandum, and the opposition thereto, and the entire record in this case, it is, by the court, this 26th day of April, 1983,

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment is granted.

See also 551 F.Supp. 636.
See also, D.C., 551 F.Supp. 636.

---

8. In a case involving theft of valuables from baggage, one court established a similar test. In *Olshin v. El Al Israel Airlines,* 15 Av. 17, 463 (E.D.N.Y.1979) the court held that to establish wilful misconduct, the plaintiff passenger must show that the airline:

(1) was aware that she had jewelry in her baggage; (2) knew that there was a danger that the jewelry would be stolen; (3) intentionally failed to warn her of this danger; and (4) knew that the failure to warn plaintiff of the danger of theft would probably result in the loss of the jewelry.