REPUBLIC NATIONAL BANK OF NEW YORK, Plaintiff,

v.

EASTERN AIRLINES, INC., Defendant.

EASTERN AIRLINES, INC., Third-Party Plaintiff,

v.

Joseph DELGAIS, Richard Delgais, Paul Cellura, William Adams, Joseph Telfel, Jr., Wells Fargo Armored Service Corp., and Renzo Baronti, Third-Party Defendants.

No. 83 Civ. 4079 (WCC).

United States District Court, S.D. New York.

July 23, 1986.

Standard, Weisberg, Heckerling & Rosow, P.C., New York City (Stanley H. Solomon, of counsel), for plaintiff.

Gillen & Caliendo, Port Washington, N.Y. (Michael J. Gillen, Patricia S. Orr, of counsel), for defendant and third-party plaintiff.

Davis, Markel, Dwyer & Edwards, New York City (Charles B. Manuel, Jr., of counsel), for third-party defendant Renzo Baronti.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff Republic National Bank of New York ("Republic") brought this suit against Eastern Airlines, Inc. ("Eastern") alleging that Eastern negligently lost a canvas bag containing two million dollars in currency that Republic had checked as baggage on an Eastern flight from New York to Lima,

Peru. Eastern has denied all responsibility for the loss, and has impleaded third-party defendant Renzo Baronti ("Baronti"), an employee of Republic who was the bag's courier on the flight to Lima, alleging that he is totally or partially responsible for the loss of the bag.

This matter is now before the Court on a variety of motions. Eastern has moved for partial summary judgment pursuant to rule 56, Fed.R.Civ.P., arguing that the Warsaw Convention [1] substantially limits its liability. Republic, on the other hand, argues that the liability limitations of the Convention are inapplicable to this case, and has cross-moved for summary judgment. Baronti has moved for summary judgment on the ground that he is not a proper third-party defendant under rule 14, Fed.R.Civ.P., and for an award of attorney's fees pursuant to rule 11, Fed.R.Civ.P. For the reasons set forth below, I conclude that the Warsaw Convention limits Eastern's liability to $634.90. Eastern's motion for partial summary judgment is therefore granted and Republic's motion for summary judgment is denied. Baronti's motion for summary judgment is granted, but his motion for attorney's fees is denied.

BACKGROUND

Not surprisingly, the parties dispute many of the facts in this case, but at least for purposes of the present motions they appear to agree on this much: Republic National Bank frequently delivers large amounts of currency to foreign countries via international air couriers on commercial airlines. On May 26, 1982, Joseph Barna, then head of Republic's transportation department, met with officials of Eastern Airlines to make arrangements for Republic's couriers to fly Eastern's routes to South America. Barna explained to Frank Griczewicz, Eastern's customer service manager at John F. Kennedy International Airport ("JFK"), that Republic would be transporting large amounts of United States currency in the form of checked baggage. Apparently as a courtesy, Griczewicz ar-ranged for Republic to receive a letter introducing its couriers to Eastern employees and for Republic to deliver its bags directly to the aircraft by armored truck. Griczewicz advised Barna, however, that Eastern would not be liable for loss of currency carried as baggage. Barna admits that Griczewicz gave him that warning, but contends that Griczewicz did not inform him of a tariff Eastern had on file with the Civil Aeronautics Board ("CAB") that provided that "[f]ragile or perishable articles, *money*, jewelry, silverware, negotiable papers, securities or other valuables *will not be accepted as checked baggage.*" Eastern tariff rule 16A(2), Affidavit of Michael Gillen in Support of Motion for Summary Judgment, exh. G [hereinafter cited as "Gillen Aff."] (emphasis added).

Notwithstanding Eastern's warning, Republic proceeded to transport currency on Eastern flights as checked baggage. On December 13, 1982, Republic dispatched Renzo Baronti to act as a courier for two bags of currency it was delivering to South America on Eastern Flight 001. One bag contained approximately five million dollars and was to be delivered to Santiago, Chile; the other bag contained two million dollars and was bound for Lima, Peru.

Baronti presented himself at Eastern's ticket counter at JFK to pick up his prepaid ticket. He did not carry the bags with him; instead, they remained in a Wells Fargo armored truck next to the airplane. According to Baronti, he advised the Eastern ticket agent that he was an international courier with two bags of high value, and that he required two baggage checks. Despite this statement, there appears to be no dispute that Baronti did not make a special declaration of the contents or the value of the bags.

The ticket agent gave Baronti his ticket and two baggage checks for the bags. The ticket was a standard Eastern ticket, containing a statement that the Warsaw Con-

1. Multilateral Convention for the Unification of Certain Rules Relating to International Transportation by Air, *done* Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (entered into force for the United States on Oct. 29, 1934 subject to a reservation), *reprinted at* 49 U.S.C. § 1502 note (1982).

vention applied to the journey, and that unless a higher value was declared in advance and additional charges were paid, Eastern's liability for loss of checked baggage was $9.07 per pound. It also provided that the carriage of contract was "subject to tariff regulations." *See* Gillen Aff. exh. B. The claim check for the bag to be delivered to Santiago was also a standard Eastern check, but the check for the bag bound for Lima was not. Rather, it was a "limited release," which Eastern apparently issues when a passenger wishes to check damaged baggage, and Eastern wants to be released from liability for the preexisting damage. *See* Gillen Aff. exh. C. In this case, however, the ticket agent apparently gave Baronti the limited release because the agent did not have a standard claim check with Lima, Peru printed on its face. The limited release did not state Baronti's ticket number, the weight of the bag, or that the liability limitations of the Warsaw Convention were applicable.

Although the parties have not expressly said so, apparently both the baggage claim check and the limited release had two parts—one to be attached to the baggage, and the other to be retained by the passenger and presented to the carrier upon arrival at the passenger's destination in order to reclaim the baggage. After receiving his ticket and baggage tags, Baronti proceeded to the armored truck where he attached one part of the baggage claim check to the bag to be delivered to Santiago, and one part of the limited release to the bag bound for Lima. He watched the Wells Fargo guards deliver the bags to an Eastern baggage handler in the cargo bay of the aircraft, and then boarded the airplane. Flight 001 made stops in Miami and in Lima, Peru. When the airplane arrived in Lima, Baronti attempted to claim the bag containing two million dollars. However, the bag was nowhere to be found, and despite searches in Lima and Miami, Eastern was unable to recover the bag and its contents.

A few weeks later, several individuals were arrested in Atlantic City, New Jersey with approximately $150,000 of the currency from the missing bag. Republic subsequently filed this suit against Eastern seeking two million dollars in damages.

## DISCUSSION

### A. Eastern's Motion for Partial Summary Judgment

As noted above, Eastern has moved for partial summary judgment on the ground that the Warsaw Convention limits its liability for the lost bag. Under article 18 of the Convention, an air carrier is presumed liable for loss of or damage to checked baggage while it is under the carrier's control. However, article 22(2) of the Convention limits the carrier's liability to $20 per kilogram or $9.07 per pound unless the passenger makes a special declaration to the carrier before the flight that his baggage has a higher value. Eastern contends that since Baronti did not make such a special declaration, article 22(2) limits its liability to Republic.

Republic, on the other hand, argues that the Convention's liability limitations are inapplicable here for two reasons. First, it argues that Eastern's failure to record certain information on the limited release as required by article 4 of the Convention precludes the application of article 22(2). Second, it contends that there are issues of fact as to whether Eastern's alleged failure to protect the bag adequately from loss or theft constitutes "wilful misconduct," which, under article 25 of the Convention, would also preclude the application of article 22(2). For the reasons set forth below, I find both of these arguments to be without merit.

### 1. The Requirements of Article 4

Article 4 of the Warsaw Convention sets out the rules applicable to checked baggage. It provides in relevant part:

(1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

. . . .

(3) *The baggage check shall contain the following particulars:*

(a) The place and date of issue;

(b) The place of departure and of destination;

(c) The name and address of the carrier or carriers;

(d) *The number of the passenger ticket;*

(e) A statement that delivery of the baggage will be made to the bearer of the baggage check;

(f) *The number and weight of the packages;*

(g) The amount of the value declared in accordance with article 22(2);

(h) *A statement that the transportation is subject to the rules relating to liability established by this convention.*

(4) The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, *if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.*

Warsaw Convention, article 4(1), (3), (4) (emphasis added).

■ There is no dispute that the limited release that Eastern's ticket agent issued to Baronti for the bag bound for Lima did not contain the information required by article 4(3)(d), (f), and (h). Thus, the terms of article 4(4) would appear to preclude the application of the liability limitations of article 22(2) to this case. Indeed, most of the courts that have considered this question in analogous situations have adopted a literal reading of article 4(4) and have not permitted carriers to invoke the liability limitations of the Convention. *See, e.g., Gill v. Lufthansa German Airlines,* 620 F.Supp. 1453, 1454–56 (E.D.N.Y.1985); *Maghsoudi v. Pan Am. World Airways, Inc.,* 470 F.Supp. 1275, 1278–79 (D.Hawaii 1979); *Kupferman v. Pakistan Int'l Airlines,* 108 Misc.2d 485, 488, 438 N.Y.S.2d 189, 192

(Civ.Ct.N.Y. County 1981); *Hill v. Eastern Airlines, Inc.,* 103 Misc.2d 306, 307, 425 N.Y.S.2d 715, 716 (Civ.Ct.Kings County 1980); *Schedlmayer v. Trans Int'l Airlines, Inc.,* 99 Misc.2d 478, 484, 416 N.Y.S.2d 461, 465–66 (Civ.Ct.N.Y.County 1979).

However, two recent decisions have eschewed a literal reading of such provisions in favor of a more practical approach. In *Martin v. Pan American World Airways, Inc.,* 563 F.Supp. 135, 141 (D.D.C.1983), the court held that a carrier's failure to record the weight of a passenger's luggage on the claim check as required by article 4(3) was a "technical and insubstantial omission" and did not preclude the carrier from availing itself of the liability limitations of the Convention. The court looked to the purposes of the requirement that the carrier record the weight on the claim check, found that they had been satisfied by other means in that case, and in view of the Convention's aim to limit the liability of carriers, excused the airline's failure to comply with the letter of the article 4(3).

Similarly, in *Exim Industries, Inc. v. Pan American World Airways, Inc.,* 754 F.2d 106, 108 (2d Cir.1985), our court of appeals held that a carrier's failure to record certain information on an air waybill as prescribed by article 8 of the Convention relating to air cargo should not preclude the carrier from invoking the liability limitations for damage or loss of cargo. Article 8(h) requires the carrier to indicate on the air waybill the "[n]umber of packages, the method of packing, and the particular marks or numbers upon them." Article 9, in language nearly identical to article 4(4), states that "if the air waybill does not contain all of the particulars set out in article 8(a) to (i), ... the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability." Nonetheless, the court of appeals held that the carrier's failure to note the method of packing and numerical markings on the waybill was not critical. It reasoned that "[d]epending on the nature of the shipment," some of the particulars required by article 8 "may have practical significance and some may not." *Id.* at

1603. Since the information omitted had little useful purpose in the context of that particular case, the court held that its omission was "technical and insubstantial," and not a ground for denying the carrier the benefit of the Convention's liability limitations. *Id.* at 1604.

I note that in the wake of *Martin,* at least one district court in this circuit has stated that the stricter, literal interpretation of article 4 of the Convention is the better construction. *See Gill,* 620 F.Supp. at 1456. Judge Wexler noted that article 4 is straightforward and not overly demanding, requiring the carrier to place only three items on a claim check to preserve the liability limitations of the Convention: notice, ticket number, and number and weight of the bags. *Id.* He concluded that in view of the great benefits the Convention grants to carriers, it is not too much to ask that carriers comply with its simple conditions. *Id.*

I share Judge Wexler's concerns, but note that he was apparently unaware of our court of appeals' opinion in *Exim* since he did not cite or comment on the case. Of course, *Exim* does not suggest that a carrier's failure to comply with the literal terms of the Convention should be excused in every case, but the decision does seem to signal that the literal interpretation of the Convention that courts have heretofore found appealing is inappropriate. It suggests that courts should apply a more practical approach that looks to the purposes of the Convention's requirements and determines whether they have been met in the circumstances of each case. Accordingly, I will employ such an approach here.

I turn first to the requirement that the carrier print the Convention's baggage liability limitations on the claim check. The obvious purpose of this rule is to make sure that the passenger is aware of those limitations so that he can decide whether to purchase insurance for his baggage. There can be no dispute that this purpose was satisfied here. First, the baggage liability limitations were printed on the back of Baronti's ticket, so Republic had notice of them. Second, Republic has indicated that it was common for it to transport

currency as checked baggage; in fact, it has stated that Baronti had made over 250 international flights as a courier for its shipments. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment at 4 [hereinafter cited as "Plaintiff's Mem."]. Therefore, it is hard to believe that Republic and Baronti were unaware of the terms of the Convention. Finally, Republic admits that Eastern expressly warned it that the airline would not be liable for loss of currency carried as checked baggage. This, too, put Republic on notice of the airline's limited liability for baggage. Accordingly, I have no trouble in concluding that Republic was not prejudiced by Eastern's failure to print the baggage liability limitations of the Convention on the limited release, and that Eastern's mistake should be viewed as an insubstantial omission.

I turn next to Eastern's failure to record the weight of the bag on the limited release. In *Martin v. Pan American World Airways, Inc.,* 563 F.Supp. 135 (D.D.C. 1983), the court explained that the requirement that the carrier indicate the weight of the baggage on the claim check has two purposes. First, it fixes the amount of the carrier's liability if the baggage is lost, thereby affording the passenger a definite basis on which to recover damages. *Id.* at 140. Second, it enables the passenger to calculate the carrier's potential liability for loss of the baggage by multiplying the weight of the bag by the Convention's liability limitation of $9.07 per pound. By making this computation, the passenger can decide whether he should purchase insurance for his baggage. *Id.*

The *Martin* court, in circumstances similar to those presented here, held that neither of these purposes was undermined by the carrier's failure to record the weight of the baggage on the passenger's claim check. With respect to the first purpose, the court stated that the carrier's liability could be fixed by reference to a tariff the carrier had on file with the CAB that provided that unless the actual weight was

stated on the baggage check, the weight of the baggage for purposes of determining liability under the Convention would be deemed to be the maximum allowable weight. *Id.* Since the maximum allowable weight for baggage was 70 pounds, the carrier's liability could be fixed by simply multiplying that figure by the liability limitation of $9.07 per pound. *Id.* As for the second purpose, enabling the passenger to determine whether he should purchase insurance, the court noted that the passenger there was aware of the approximate weight of her baggage, was on notice of the limited liability provisions of the Convention, and knew the high value of her baggage. *Id.* at 140–41. The court therefore concluded that the passenger had all the information necessary to decide whether to purchase insurance, and held that the carrier's failure to record the weight of the bag on the claim check was a technical and insubstantial omission that did not preclude the carrier from invoking the benefit of the liability limitations of the Convention. *Id.* at 141.

The *Martin* court's analysis is equally applicable here. First, like the carrier in *Martin,* Eastern had on file with the CAB a tariff that provided that if the weight of the baggage was not recorded on the baggage claim check, the weight of each piece would be deemed to be the maximum allowable weight. *See* Eastern tariff rule 25(E), note 2, Gillen Aff. exh. F. Accordingly, there is no difficulty in fixing the extent of Eastern's liability under the Convention. Second, like the passenger in *Martin,* Republic knew the approximate weight of the bag, was on notice of the liability limitations of the Convention, and certainly was aware of the high value of the bag's contents. Therefore, it had all the information it needed to determine whether to purchase insurance to cover its loss in the event the bag was lost or damaged. For these reasons, I conclude that Republic was not prejudiced by Eastern's failure to record the weight of the bag on the limited release,

and that this technical and insubstantial omission should not affect Eastern's right to invoke the liability limitations of the Convention.[2]

I turn finally to Eastern's failure to record Baronti's ticket number on the limited release. The evident purpose of the requirement that the carrier indicate the passenger's ticket number on the baggage check is to assure that the baggage is returned to the same passenger who checked it. By matching the passenger's ticket number with the number on the baggage tag affixed to the bag, the carrier can be certain that the baggage will be claimed by its true owner.

In this case, the parties agree that Baronti attached part of the limited release to the bag bound for Lima. The parties have submitted the portion of the limited release Baronti retained in order to claim the bag, *see* Gillen Aff. exh. C, and there is a number printed on its face. I assume, although the parties have not specifically stated whether this is so, that the same number was printed on that part of the limited release Baronti affixed to the bag. If so, that would fulfill the purpose of enabling the carrier to match the baggage with the passenger who checked it. In any event, the fact that Baronti's ticket number was not on the limited release did not make it any more likely that the carrier would permit another passenger to claim the bag, since no other passenger's ticket number was on the tag affixed to the bag either. Finally, and perhaps most important, none of the parties contends that Eastern *accidentally* relinquished the bag to a passenger other than Baronti; all reasonably assume that the bag was stolen. The absence of Baronti's ticket number on the limited release could not have contributed to such a theft. Accordingly, I conclude that Republic was not prejudiced by Eastern's failure to record Baronti's ticket number on the limited release, and that Eastern

---

**2.** Eastern also failed to note on the limited release the number of packages checked as required by article 4(3)(f), but since a separate claim check was issued for each package, the

purpose of this requirement would also appear to have been met. *See Maghsoudi,* 470 F.Supp. at 1278 n. 7.

is not precluded from invoking the liability limitations of the Convention.

For all of these reasons, I conclude that Eastern's failure to comply with literal terms of article 4 of the Convention is not fatal to its right to invoke the liability limitations of article 22(2). Therefore, I turn to Republic's second argument in opposition to Eastern's motion for partial summary judgment—that there are material issues of fact as to whether Eastern's failure to take appropriate steps to protect high value baggage from loss or theft constituted wilful misconduct.

### 2. Wilful Misconduct

■ Article 25(1) of the Convention provides:

> The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

Warsaw Convention, article 25(1). Our court of appeals has defined wilful misconduct as "the intentional performance of an act with knowledge that the performance of that act will probably result in injury or damage," or "the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences." *Pekelis v. Transcontinental & W. Air, Inc.*, 187 F.2d 122, 124 (2d Cir.), *cert. denied*, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951); *see also Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 536–37 (2d Cir.1965), *cert. denied*, 382 U.S. 982, 86 S.Ct. 559 (1966); *Grey v. American Airlines, Inc.*, 227 F.2d 282, 285 (2d Cir.1955), *cert. denied*, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956).

■ Republic argues that Eastern was guilty of wilful misconduct in two ways. First, Republic contends that Eastern disregarded its own rule that "high value baggage," such as Republic's bags of currency, should be loaded into the cargo hold of the airplane last. Republic contends that Eastern permitted four cartloads of general cargo and baggage to be loaded after the bags of currency were placed onboard, thereby "provid[ing] an opportunity for a thief to attack and purloin the contents of plaintiff's currency bag headed for Lima." Plaintiff's Mem. at 7.

In response, Eastern argues that Republic cannot truthfully contend that the airline disregarded its "high value baggage" procedures because Eastern had no "high value baggage" procedures to follow. Eastern had no rule that high value baggage should be placed onboard the airplane last; it was Republic's rule that its couriers should ask baggage handlers to load the bags of currency last. *See* Affidavit of Renzo Baronti in Support of Third-Party Defendant's Motion for Summary Judgment, exh. E at 16, 49, 50, 54.

Not to be thwarted so easily, Republic argues that Eastern's failure to adopt "high value baggage" procedures is the second ground for a finding of wilful misconduct. Republic argues that if Eastern had adopted rules to protect "high value baggage," the loss of its bag could have been avoided. For example, Republic contends that Eastern should have advised its agents at intermediate stops such as Miami that high value baggage would soon be arriving and special security precautions should be taken. Plaintiff's Mem. at 9.

Eastern argues tnat it does not have "high value baggage" procedures because there is no such thing as "high value baggage," only "high value cargo." Eastern does not accept extremely valuable items such as money or jewelry as checked baggage, *see* Eastern tariff rule 16A(2), Gillen Aff. exh. G, and accordingly treats all baggage as ordinary baggage no matter what its contents. If a passenger wishes to ship an extremely valuable item, he has two options. First, he can retain control of the item and be personally responsible for its loss, or he can ship it as air cargo, declare the value of the item, and pay an extra charge for its carriage. Eastern has special handling procedures for high value air cargo, but the customer pays a premium

for that extra service. Republic apparently was unwilling to pay the extra cost to obtain that extra service, and it cannot be heard to complain now that it appears that the extra service would have been well worth the cost.

Republic contends that Eastern was nonetheless guilty of wilful misconduct because the airline was aware of the contents of its two bags. But even if Eastern was aware of the contents of the bags, it expressly warned Republic that it would not be liable for any loss of currency carried as checked baggage. In light of this express admonition, it would appear that if anyone was guilty of wilful misconduct, it was Republic, and not Eastern.

■ Republic also complains that while Eastern advised it that the airline would not be liable for the loss of currency, Eastern did not advise it of the tariff that provided that Eastern did not accept currency as checked baggage. This argument is irrelevant for two reasons. First, Baronti's ticket expressly stated that the contract of carriage was "subject to tariff regulations." Second, it is well settled that passengers are conclusively deemed to have notice of a tariff on file with the CAB, even if they do not receive actual notice of it. *Tishman & Lipp, Inc. v. Delta Air Lines,* 413 F.2d 1401, 1403 (2d Cir.1969); *Vogelsang v. Delta Air Lines, Inc.,* 302 F.2d 709, 712 (2d Cir.), *cert. denied,* 371 U.S. 826, 83 S.Ct. 46, 9 L.Ed.2d 65 (1962); *Mao v. Eastern Air Lines, Inc.,* 310 F.Supp. 844, 846 (S.D.N.Y.1970). Accordingly, it is of no consequence that Eastern did not expressly advise Republic of the terms of the tariff.

For all of these reasons, I conclude that there exist no disputed issues of material fact and that, as a matter of law, Eastern was not guilty of wilful misconduct for failing to adopt "high value baggage" procedures. Accordingly, the airline may properly invoke the liability limitations of the Warsaw Convention, and Eastern's motion for partial summary judgment is granted. In accordance with Eastern tariff rule 25(E), the weight of Republic's bag will be deemed to be 70 pounds. That figure multiplied by the $9.07 per pound

liability limitation set forth in article 22(2) establishes Eastern's maximum liability at $634.90.

### B. Republic's Cross-Motion for Summary Judgment

Republic has cross-moved for summary judgment on the theory that if the liability limitations of article 22(2) are not applicable to this case, it is entitled to a full and automatic recovery of two million dollars. In view of my decision above that Eastern may invoke the benefit of the liability limitations of the Convention, Republic's cross-motion for summary judgment in the amount of two million dollars obviously must be denied.

In addition, I note that at this juncture Republic is not even entitled to summary judgment in the amount of $634.90. In addition to article 22(2), a number of other provisions could operate to relieve Eastern from liability. For example, under article 20, a carrier is not liable if he took all necessary measures to avoid the loss, and under article 21, he is not liable if the loss was caused by the passenger's contributory negligence. Since these issues will obviously involve disputed issues of material fact, I must deny Republic's motion for summary judgment in any amount.

### C. Baronti's Motion for Summary Judgment

Baronti, Republic's courier, has moved for summary judgment on the ground that he is not a proper third-party defendant under rule 14(a), Fed.R.Civ.P. Of course, in view of my decision above that Eastern's liability is limited to a maximum of $634.90, the significance of Baronti's motion is greatly diminished.

■ Rule 14(a) provides that a defendant may implead any person "who is or may be liable *to him* for all or part of the plaintiff's claim against him." Rule 14(a), Fed. R.Civ.P. (emphasis added). As the clear language of the rule would suggest, a third-party defendant may not be impleaded merely because he may be liable to the plaintiff. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 368 n. 3, 98

S.Ct. 2396, 2399 n. 3, 57 L.Ed.2d 274 (1978); *Index Fund, Inc. v. Hagopian*, 417 F.Supp. 738, 743–46 (S.D.N.Y.1976); *see also* Rule 14, Fed.R.Civ.P. advisory committee's note to 1946 amendment. Instead, a third-party defendant may be impleaded only if he may be liable to the defendant. Baronti contends that Eastern has not shown how he is or may be liable to the airline. For the reasons set forth below, I agree with Baronti's conclusion, and accordingly grant his motion for summary judgment.

The crux of Baronti's motion is that at all times relevant to this case, he was acting within the scope of his employment as an agent for Republic. Accordingly, he contends that any negligence in his performance of his duty to safeguard the bags of money is chargeable to Republic, and that Eastern may, and in fact has, asserted Republic's contributory negligence as an affirmative defense to its own liability. Therefore, Baronti contends that the third-party action against him is unnecessarily duplicative.

In response, Eastern concedes that to the extent that Baronti was merely negligent in the performance of his employment duties, that negligence is imputed to Republic and can be asserted by Eastern as an affirmative defense. Third-Party Plaintiff's Memorandum of Law in Opposition to Third-Party Defendant's Motion for Summary Judgment at 18 [hereinafter cited as "Third-Party Plaintiff's Mem."]. However, Eastern contends that there are issues of fact as to whether Baronti was acting outside the scope of his employment; I assume that Eastern means to suggest by this that Baronti may have played some role in the apparent theft of the currency.

While Eastern is correct in asserting that if Baronti stole the currency his misdeeds could not be imputed to Republic and could not be raised as an affirmative defense, *see Baker v. Lansdell Protective Agency, Inc.*, No. 83 Civ. 7577 (WCC), slip op. at 7–9 (S.D.N.Y. Nov. 20, 1985) [Available on WESTLAW, DCTU database], Eastern has not come forward with any admissible evidence that Baronti played any role in the disappearance of the money. The airline

rather baldly states that nine "factual issues ... clearly support[ ] the propriety of [its] third-party claims against Baronti," Third-Party Plaintiff's Mem. at 7, but conspicuously fails even to attempt to show how these "factual issues" place Baronti's alleged acts outside the scope of his employment.

The only evidence that might raise a genuine issue of material fact on this question are the somewhat inconsistent results of the three polygraph tests administered to Baronti after the money disappeared. However, such results are generally inadmissible in federal court, *United States v. Cochran*, 499 F.2d 380, 393 (5th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975); *United States v. Bando*, 244 F.2d 833, 841 (2d Cir.), *cert. denied*, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53 (1957); *United States v. Hart*, 344 F.Supp. 522, 524 (E.D.N.Y.1971), and therefore Eastern cannot rely on them to defeat this motion for summary judgment, *see Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 188 (2d Cir.), *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978) (grant of summary judgment for defendant affirmed; hearsay testimony and opinion testimony that would not be admissible at trial may not properly be set forth in affidavit in opposition to motion for summary judgment); *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 97 (2d Cir.1970) (summary judgment affirmed; plaintiff's affidavit in opposition to motion for summary judgment based on inadmissible evidence).

Accordingly, I conclude that there is no proper basis for Eastern's third-party complaint against Baronti. To the extent Baronti was acting within the scope of his employment, his negligence or misfeasance is imputed to Republic and can be raised by Eastern as an affirmative defense to Republic's complaint. To the extent Baronti was acting outside the scope of his employment, his misdeeds would not be chargeable to Republic and would be the proper basis for a third-party complaint, but Eastern has not come forward with any admissible evidence to demonstrate that this was in fact the case. Therefore, Baronti's motion for summary judgment is granted.

Baronti has also moved for an award of attorney's fees, claiming that Eastern commenced and maintained this third-party action to harass him and to incur greater expenses for Republic, which has paid his counsel fees. I have carefully considered this motion, and have concluded that it should be denied. While Eastern's arguments in support of its third-party action are without merit, I cannot say that they are frivolous or that Eastern acted in bad faith. Accordingly, Baronti's motion for an award of attorney's fees is denied.

CONCLUSION

For the foregoing reasons, Eastern's motion for partial summary judgment is granted, and Republic's motion for summary judgment is denied. Baronti's motion for summary judgment is granted, but his motion for an award of attorney's fees is denied. As discussed above, Eastern's maximum liability for the loss of Republic's bag is $634.90. While Republic is not now entitled to summary judgment in that amount, I assume that Eastern is willing to accept judgment in that amount rather than proceed to trial. If that is the case, Eastern is directed to submit a proposed judgment in the amount of $634.90 plus costs within seven days of the date of this Opinion and Order.

SO ORDERED.