### Hibbard
### v.
### Transworld Airlines
*[Cite as 8 AOA 690]*

*Case No. CA90-01-008*
*Butler County, (12th)*
*Decided December 31, 1990*

*Hugh D. Holbrock, Holbrock & Jonson, 315 South Monument Avenue, P. O. Box 687, Hamilton, Ohio 45012, for Plaintiff-Appellee.*

*Paul W. McCartney, Rendigs, Fry, Kiely & Dennis, 900 Central Trust Tower, Cincinnati, Ohio 45202-3613, for Defendant-Appellant.*

JONES, P.J.

Defendant-appellant, Transworld Airlines, Inc. ("TWA"), appeals a bench trial judgment awarding $1,396 to plaintiff-appellee, Norah Nick Hibbard, as damages for luggage Hibbard lost while on a TWA flight from Cincinnati, Ohio, to London, England.

On March 12, 1985, Hibbard had to make an emergency trip to London where her father was hospitalized. Hibbard telephoned TWA and made arrangements for TWA's first available flight to London. Hibbard arrived at the airport only five minutes before her flight's departure. TWA personnel quickly checked Hibbard in and handed her her ticket and boarding pass inside an envelope which included a limitation of liability clause pursuant to the Warsaw Convention. TWA personnel also encouraged Hibbard to hurry and catch her flight which was only moments from departure.

Although TWA personnel did not weigh Hibbard's bag or write down the number of pieces of luggage she checked, it is undisputed that Hibbard only checked one piece of luggage. When Hibbard arrived in London, her luggage had been lost and was never recovered. Hibbard contacted TWA and airline officials authorized her to spend $100 to be reimbursed against the value of her lost belongings.

When Hibbard filed a claim with TWA for the full value of her belongings, TWA attempted to invoke the liability limitation provisions of the Warsaw Convention. Hibbard filed suit, claiming the Convention's limitation provisions did not apply. Following a bench trial, the Hamilton Municipal Court issued judgment in favor of Hibbard for $1,296 representing damages arising from her loss of luggage and an additional $100 representing the amount TWA authorized Hibbard to spend for emergency clothing and costs. This appeal followed.

TWA submits three assignments of error for review. They read, as follows:

"Assignment of Error No. 1.
"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FINDING THAT THE LIMITATIONS OF THE WARSAW CONVENTION DID NOT APPLY AND ENTERING JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEE."

"Assignment of Error No. 2.
"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN AWARDING PLAINTIFF-APPELLEE THE FULL VALUE OF HER LOST BELONGINGS."

"Assignment of Error No. 3.
"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN AWARDING AN ADDITIONAL ONE HUNDRED DOLLARS ($100.00) TO PLAINTIFF-APPELLEE ABOVE HER CLAIMED DAMAGES."

In its first assignment of error, TWA contends the trial court erred in finding that the liability limitations of the Warsaw Convention's Article 22 do not apply.[1]

Hibbard's position is that TWA cannot avail itself of the Article 22 liability limitations because it failed to include a notice of the liability limitations and other required information in Hibbard's baggage check as required by Article 4 of the Convention. Before addressing this issue, however, we consider Hibbard's additional argument that the Convention is wholly inapplicable due to TWA's failure to sufficiently prove that the case at bar falls within the Convention's scope.

Pursuant to Article 1(1), the Convention applies "*** to all international transportation of persons [and] baggage *** performed by aircraft for hire." International transportation is defined by Article 1(2) as:

"[A]ny transportation in which, according to the contract made by the parties, the *place of departure* and the *place of destination,* whether or not there be a break in the transportation or a transshipment, *are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty,* suzerainty, mandate or authority *of another power, even though that power is not a party to this convention. ***"* (Emphasis added.)

According to this language, the Convention will apply in two situations. First, it ap-

plies if according to the contract of transportation, which in the case at bar is a plane ticket, travel will be from one High Contracting Party to another. Second, if the transportation contract provides for travel from a High Contracting Party, for stops abroad, and then for a return to that same High Contracting Party, then the Convention also applies. *Lee v. China Airlines, Ltd.* (C.D. Cal. 1987), 669 F. Supp. 979, 980.

Hibbard submits that her flight's place of departure was the United States while the place of destination was London, England. According to her, TWA failed to submit competent evidence demonstrating that England was a High Contracting Party to the Convention. Absent evidence regarding England's status as a High Contracting Party, a stipulation to that effect, or introduction of a certified copy of the Convention, Hibbard argues the Convention simply does not apply. We reject Hibbard's argument for two reasons.

The United States has been a party to the Convention since October 29, 1934, see Stat. Section 3000, *et seq.,* and the Convention, as a treaty of the United States, is the supreme law of the land. Clause 2, Article VI, United States Constitution. See, also, *Air France v. Saks* (1985), 470 U.S. 392, 105 S.Ct. 1338; *Trans World Airlines, Inc. v. Franklin Mint Corp.* (1984), 466 U.S. 243, 104 S.Ct. 1776. The Convention is a self-executing treaty and no domestic legislation is required to give the Convention the force of law in the United States. *Trans World Airlines, supra,* at 252, 104 S.Ct. at 1783.

TWA raised the Convention and its liability limitations as a defense in its answer, thereby giving reasonable written notice of its intent to rely on United States law. Accordingly, the trial court could take judicial notice of the Convention and inform itself of the Convention's Provisions in such manner as it deemed proper. Civ. R. 44.1. This would include recognition that the United Kingdom is a High Contracting Party to the Convention, see *Lee v. China Airlines, supra,* at 980, and there was no need for TWA to offer specific evidence to that effect unless the court called upon counsel to aid in obtaining such information.

We further find that the United Kingdom's status as a High Contracting Party is immaterial since the place of destination was not the United Kingdom as argued by Hibbard, but the United States. The Convention only allows for one destination which is to be determined by reference to the parties' intent. See *In re alleged Food Poisoning Incident* (C.A.2, 1985), 770 F. 2d 3. A review of the record reveals that Hibbard's ticket and itinerary provided for her to fly from Cincinnati, Ohio, to New York, and then on to London. From London, Hibbard was to return to Cincinnati via St. Louis, Missouri. Accordingly, both the place of origin and the place of destination were Cincinnati which is within the territory of a single High Contracting Party with an agreed stopping place within another power, namely the United Kingdom. Consequently, the flight is subject to the Convention. *Ofikuru v. Nigerian Airlines, Ltd.* (S.D. N.Y. 1987), 670 F. Supp. 89; *Lee v. China Airlines, supra.* Having found that the case at bar is subject to the Convention, we now turn to the question of whether TWA complied with the provisions of Article 4, thereby entitling it to the $560 limitation on liability.

Article 4 requires an air carrier to issue a baggage check containing certain information including the number and weight of packages and notice that the Convention's liability limitations apply. Article 4(4) prohibits a carrier from receiving the benefit "*** of those provisions of the Convention which exclude or limit his liability" if the baggage check does not contain the number and weight of the packages and a statement providing notice of the limitations on liability. One purpose of Article 4 is to place a passenger on notice as to the maximum recovery permitted if baggage is lost. This permits the passenger to determine whether to purchase additional insurance for the baggage. *Republic National Bank v. Eastern Airlines, Inc.* (S.D. N.Y. 1986), 639 F. Supp. 1410, 1415.

It is undisputed that Hibbard had but one bag. Furthermore, she did not even contend that the bag's weight exceeded the twenty-eight kilogram limit. Nevertheless, TWA was willing to pay the $560 maximum amount for the lost bag. Hibbard suggests that she might have purchased additional insurance if TWA had properly advised her that she had only one piece of luggage and that it exceeded the weight limitation, but she was prevented from doing so when TWA employees directed her to hurry to catch her flight. By her own

acknowledgement, it was important for Hibbard to get to England on the first available flight and she arrived at the airport only five minutes prior to her flight's departure. The actions of TWA employees in encouraging Hibbard to hurry were obviously not the result of an ulterior motive to avoid compliance with the Convention, but were designed to help her make her flight.

Technical and insubstantial omissions of Article 4 that do not prejudice the passenger will not prevent an air carrier from availing itself of the Convention's limitation on liability. *Abaa v. Pan American World Airways, Inc.* (D.Minn. 1987), 673 F. Supp. 991, 993; *Martin v. Pan American World Airways, Inc.* (D.C. 1983), 563 F. Supp. 135, 141.

We accordingly conclude that the trial court erroneously determined that the Convention's liability limitation provisions were inapplicable to the case at bar. We find that TWA is entitled to avail itself of the $560 liability limitation despite the Article 4 omissions from Hibbard's baggage check. For these reasons, the first assignment of error is well-taken and is hereby sustained.

In its second assignment of error, TWA argues that the trial court erred in awarding Hibbard the full value of her lost belongings. Hibbard claimed that the value of her belongings in her lost luggage amounted to $1,296. When asked to list the original cost of each lost item and its current value, Hibbard listed the same figure as both the present value and original cost of each item. The trial court awarded these amounts without any consideration of depreciation or other reduction in value from the original cost.

TWA takes the position that where property is totally destroyed, the trial court must measure damages as the reasonable market value of the property immediately before its destruction. See *Cooper v. Feeney* (1986), 34 Ohio App. 3d 282, 283. We find merit in this assignment of error, not necessarily because the trial court awarded damages as measured by the original cost rather than the present market value of the lost property, but because the liability limitations of the Warsaw Convention apply and TWA's liability is limited to the $560 allowable for one piece of luggage. Accordingly, the second assignment of error is hereby sustained.

In its third assignment of error, TWA contends that the trial court erred by awarding an additional $100 to Hibbard as damages. The trial court based this award on TWA's authorization permitting Hibbard to spend $100 for immediate necessities. Where an air carrier is liable for lost luggage, an immediate authorization to spend money for necessities which is to be reimbursed by the carrier should be offset against any damage award. *Martin, supra,* at 137, 138, fn. 3. Accordingly, the trial court erred in awarding Hibbard this additional amount which should have been offset from the amount recoverable under the Warsaw Convention. The third assignment of error is hereby sustained.

The judgment is reversed and remanded so that the trial court can enter judgment in accordance with the Convention's liability limitations.

YOUNG J., concurs.

KOEHLER, J., dissents.

KOEHLER, J., dissenting.

I must dissent. I have searched the record of this matter seeking to find a copy, certified or otherwise, of the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw, October 12, 1929, or provided in the said convention as amended by the protocol signed at The Hague, September 28, 1955. I have been unsuccessful in the search.

I have, however, found what is indicated to ·be exhibit D, which is designated as two copies of various revised pages to the "International Passenger Rules Tariff No. IPR-2 C.A.B. #376," issued by Airline Tariff Publishing Co., Agent for and on behalf of Transworld Airlines, Inc., which tariff pages were in effect on March 12, 1985. Although this document could conceivably be a document implementing provisions of the "Warsaw Convention," the original certification appeared only as an attachment to the defendant's memorandum in opposition to plaintiff's motion for summary judgment. Also included with that memorandum appeared to be a number of pages of copies of text relating to the Warsaw Convention and case annotations interpreting portions of the Warsaw Convention. The attachment to the memorandum is not an appropriate document even for purposes of summary judgment.

The trial court found a genuine issue of fact presented and overruled the defendant's motion for summary judgment. Accordingly, the affidavits, attachments, et cetera, to the memorandum in support of summary judgment were not before the trial court when the cause came on for merit hearing.

All that the trial court could properly consider would have been the testimony presented and any exhibits introduced into evidence and stipulations, if any, between the parties. A thorough review of the record and the transcript of proceedings reveals that the only witness to present testimony was the plaintiff. After plaintiff was examined on direct, cross-examined, and examined on redirect, the plaintiff rested. The court ordered all of plaintiff's exhibits admitted into evidence and over objection of plaintiff's counsel indicated that a defendant's exhibit D was a copy of the original document attached to the motion for summary judgment and would be admitted into evidence. At tp. 19, defense counsel, describing exhibit D, states that "[a]ll it is is the outlining the law, the rules --." The defense counsel rested his case relying upon the testimony of the plaintiff and exhibit D to establish his defense.

Defense counsel did not represent that exhibit D was the Warsaw Convention and did not argue to the court that it should take judicial notice of the Warsaw Convention; there is no stipulation that exhibit D is a copy of the Warsaw Convention, nor any part thereof, and its admission was objected to by plaintiff's counsel, albeit on other grounds. After thorough review of the record and in spite of Judges Jones' learned and well-done research relative to the Warsaw Convention, it is my conclusion that the first assignment of error in this cause should be overruled. Like the trial court, the majority's position assumes that the defense properly presented the conditions of the Warsaw Convention to the court for consideration on the trial and the merits. I think the defense failed in proof of its defense for several reasons:

1. None of the material submitted on the motions for summary judgment is properly before the court on a trial on the merits and the trial court acknowledged that in the trial of the cause.

2. The defendant failed to establish the Warsaw Convention as a treaty executed by the United States and therefore the supreme law of the land and, in fact, failed to submit to the court in evidence anything beyond exhibit D which is certainly not the Warsaw Convention and to me appears to be an agreement between contracting airlines in an effort to limit their own liability and which, in fact, eliminates certain airlines from certain parts of that agreement.

Accordingly, unless an agreement, stipulation, or proper certification of the Warsaw Convention and its terms and conditions applicable to this case is part of the record, there is nothing before the trial court or this court which would require reversal of the trial court's decision. The trial court under Civ. R. 41 cannot, nor should this court, take judicial notice of the Warsaw Convention.

---

[1] Article 22(2) provides that: "In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs [$20] per kilogram ***." Pursuant to the Civil Aeronautics Board's tariffs which supplement the Convention, Martin v. Pan American World Airways, Inc. (D.C. 1983), 563 F. Supp. 135, 140, TWA limited the maximum weight allowable for each bag to twenty-eight kilograms or a maximum liability of $560 for one bag.