**James A. CURTIN, et al., Appellants,**

v.

**UNITED AIRLINES, INC., Appellee.**

No. 00–7274.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 2001.

Decided Dec. 28, 2001.

Leonard N. Bebchick argued the cause and filed the briefs for appellants.

Frederick C. Schafrick argued the cause for appellee. With him on the brief was Timothy G. Lynch.

Before: SENTELLE, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Three United Airlines passengers, on behalf of themselves and others similarly situated, sued United under an international treaty known as the Warsaw Convention to recover the value of baggage lost on international flights. Without reaching the question of class certification, the district court granted summary judgment against the three named plaintiffs, on the ground that each had entered into an accord and satisfaction with United by accepting a check from the air carrier "in full and complete settlement of any and all claims." We affirm the judgment of the district court.

I

In September 1998, James Curtin flew from Cork, Ireland to Dulles Airport in Virginia. After landing at Dulles, he reported that a bag of golf clubs, estimated to be worth $921, was missing. In January 1999, Margaret Wombacher flew from London to Chicago. One of her bags never arrived in Chicago, and she reported a loss of $1855. In the same month, David Simmons flew from London to Atlanta, connecting through Chicago. His bag made it to Chicago but not to Atlanta, and he filed a claim for $1355.

In response to the claims for compensation filed by Curtin and Wombacher, United sent each a letter stating:

Because your itinerary involved an international destination, claim settlement is governed by the 'Warsaw Convention' which limits our liability to $635 due to loss, damage or delay.

J.A. at 35, 126. It sent Simmons a slightly different letter, which read:

As your trip involved international travel, payment for your loss is based on the weight of your checked bag. The maxi-

mum liability our company assumes is $9.07 per pound, up to 70 pounds per checked item unless excess valuation is declared and purchased prior to travel. Our check for $635 in settlement for the missing property, will be mailed to you shortly.

J.A. at 116. Subsequently, United mailed each plaintiff a check for $635. Above the endorsement line on each check was the following legend:

> By endorsement of this check payee(s) agree that the amount shown is accepted in full and complete settlement of any and all claims which payee(s) may have against United Air Lines, Inc., its connecting carriers, their agents or employees for loss, damage or delay sustained by reason of an incident involving a United flight.

J.A. at 36, 119, 127. Curtin, Wombacher, and Simmons all signed and deposited their checks, the latter after consulting with an attorney.[1]

Article 18 of the Warsaw Convention, an international air carriage treaty ratified by the United States in 1934, creates a cause of action against an air carrier for loss of or damage to a passenger's checked baggage. 49 U.S.C. § 40105 note. Article 22(2) of the Convention limits a carrier's liability for such loss to a maximum of 250 francs per kilogram, or $9.07 per pound. *See Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984). United calculated its liability to each plaintiff as no

more than $635—the amount it tendered by check—because the maximum weight of a bag permitted on its flights was 70 pounds. Article 4(3) of the Convention, however, requires that baggage checks contain certain particulars, including the number and weight of the bags, and Article 4(4) states that "if the baggage check does not contain" those particulars "the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability." It is undisputed that United did not record the weight of any of the plaintiffs' bags.

In *Cruz v. American Airlines, Inc.*, 193 F.3d 526 (D.C.Cir.1999), this circuit ruled that the plain language of Article 4(4) precludes an air carrier's invocation of the liability limits of Article 22(2) when it has not recorded the weight of the baggage. *Cruz* acknowledged that passengers are not prejudiced by an airline's failure to note a bag's weight if the carrier's maximum weight allowance is used to determine the amount of its liability, and that in such circumstances the recording requirement "makes little real sense." *Id.* at 529. Nonetheless, *Cruz* concluded that "the language of the Convention is unyielding and we have no warrant to dispense with portions we might think purposeless." *Id.*

This case was filed on November 17, 1999, five weeks after the decision in *Cruz*. The First Amended Complaint was brought by Curtin, Wombacher, and Simmons, as a class action on behalf of them-

---

1. Wombacher signed only after inserting the word "not" before the phrase "accepted in full and complete settlement" on the back of the check. The district court held that the validity of the release was not affected by the insertion of "not." *Curtin v. United Airlines, Inc.*, 120 F.Supp.2d 73, 77 n. 2 (D.D.C.2000) (citing RESTATEMENT (SECOND) OF CONTRACTS § 281 cmt. d, illus. 6 (1979) (explaining that a creditor cannot avoid the consequences of cashing a check offered as payment in full by declaring that he regards it as part payment)); *see* U.C.C. § 3–311 cmt. 2 (noting that a seller who deposits a check accepts the accord notwithstanding that he "adds a notation to the check indicating that the check is accepted under protest or in only partial satisfaction of the claim"). Plaintiffs do not challenge that ruling on appeal.

selves and all others similarly situated.[2] The class was defined as all persons who checked baggage on an international United flight "without the weight of that baggage having been recorded," and who received payment of less than what they claimed was the fair value of the loss of or damage to that baggage—such payment "being an amount (usually $635) which United asserted or believed was the limit of its liability for such baggage loss/damage under Warsaw's Article 22(2) $9.07 per pound liability limitation." First Am. Compl. ¶ 5. Plaintiffs proposed a class period "beginning the two years prior to initiation of this suit and ending on March 3, 1999." *Id.*[3] They claimed that they were entitled to recover the full value of their lost or damaged baggage, and that the Warsaw Convention's liability limit was inapplicable because the weight of their baggage had not been recorded on their baggage checks.

United moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, raising the defense of accord and satisfaction by virtue of plaintiffs' endorsement and deposit of the checks that United had tendered in settlement of their claims. Plaintiffs countered that there were no valid accords and satisfactions, and that even if there were, they should be rescinded on the grounds of mistake and/or misrepresentation. Plaintiffs also asked the district court to permit discovery and to rule on the issue of class certification before addressing defendant's motion for summary judgment. The district court de-

nied those requests and granted United's motion.

## II

■ We begin with two preliminary matters: plaintiffs' contentions that the district court erred by deciding United's motion for summary judgment (1) without permitting discovery and (2) without ruling on the question of class certification. The first of these arguments is readily dispatched. Although it is true that summary judgment ordinarily "is proper only after the plaintiff has been given adequate time for discovery," *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C.Cir.1988), plaintiffs' briefs fail to identify any facts essential to opposing United's motion as to which discovery is needed. Moreover, at oral argument, plaintiffs agreed that in light of factual concessions made by United below, all the facts required to decide the summary judgment issue are already in the record and further discovery is unnecessary. *See also* Appellants' Br. at 18, 27. Accordingly, there is no possible ground for reversing the district court's denial of discovery. *See Moore v. United States*, 213 F.3d 705, 710 n. 3 (D.C.Cir.2000) (holding that "a district court may deny discovery requests when additional facts are not necessary to resolve the summary judgment motion"); FED.R.CIV.P. 56(f) (providing that the court may continue an application for summary judgment to give time for discovery if the opposing party "cannot ... present by affidavit facts essential to justify the party's opposition").

---

**2.** Curtin was the only plaintiff named in the original complaint. The court granted subsequent petitions by Wombacher and Simmons to intervene as additional plaintiffs and putative class representatives. J.A. at 83.

**3.** Effective March 4, 1999, amendments to the Warsaw Convention eliminated Article 4's requirement that the weight of checked baggage

be recorded. Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 8, 1955, *reprinted in* S. EXEC. REP. No. 105–20, at 21–32 (1998).

■ The certification issue detains us only slightly longer. The plaintiffs assert that the district court was obliged to determine whether their suit could proceed as a class action before it could consider the merits of their individual claims, in light of Federal Rule of Civil Procedure 23(c) and the Supreme Court's holding in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Neither of these authorities, however, suggests that a court is barred from rendering an easy decision on an individual claim to avoid an unnecessary and harder decision on the propriety of certification.

We begin with Rule 23(c), which states only that the district court shall determine whether a case may be maintained as a class action "[a]s soon as practicable after the commencement of [the] action." As the Seventh Circuit has noted, although a certification decision will usually be "practicable" before the case is ripe for summary judgment, that will not always be so, and the word " 'practicable' allows for wiggle room"—enough to make the order of disposition of motions for summary judgment and class certification a question of discretion for the trial court. *Cowen v. Bank United of Texas*, 70 F.3d 937, 941 (7th Cir.1995); *see Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir.2000); *Thompson v. County of Medina*, 29 F.3d 238, 240–41 (6th Cir.1994); *Adamson v. Bowen*, 855 F.2d 668, 677 n. 12 (10th Cir.1988); *Christensen v. Kiewit–Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir.1987); *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir.1984).

Nor is *Eisen* to the contrary. There, the Court reversed a district court that had held a preliminary hearing on the merits of the case in order to decide whether the plaintiff should be required to bear the cost of notice to the members of the asserted class. "We find nothing in either the language or history of Rule 23," the Court said, "that gives a court any authority to conduct a *preliminary inquiry* into the merits of a suit *in order to determine whether it may be maintained as a class action.*" *Eisen*, 417 U.S. at 177, 94 S.Ct. at 2152 (emphasis added).[4] Nothing of the sort occurred here. The district court did not conduct a preliminary inquiry, but rather reached a final resolution on summary judgment.[5] Moreover, it did so to determine not whether the case could be maintained as a class action, but rather whether any of the named plaintiffs had a viable claim on the merits. Under such circumstances, nothing in *Eisen* or Rule 23(c) requires the district court to rule on class certification before granting or denying a motion for summary judgment. *See Thompson*, 29 F.3d at 240–41; *Wright*, 742 F.2d at 544–46.

As plaintiffs note, it is often more efficient and fairer to the parties to decide the class question first. But that was not so in this case where, as we discuss below, the district court readily and correctly perceived fatal flaws in plaintiffs' claims. Reversing the usual order of disposition in such circumstances spares both the parties and the court a needless, time-consuming inquiry into certification. *See* FEDERAL JU-

---

**4.** *See also Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir.1971) (*"In determining the propriety of a class action,* the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (emphasis added)), *quoted in Eisen*, 417 U.S. at 178, 94 S.Ct. at 2153.

**5.** In *Eisen,* the Court expressed concern "that a preliminary determination of the merits may result in substantial prejudice to a defendant, since ... [t]he court's tentative findings, made in the absence of established [trial] safeguards, may color the subsequent proceedings...." 417 U.S. at 178, 94 S.Ct. at 2153.

DICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.11 (1995) (stating that "[w]hen it is clear that the action lacks merit, dismissal [before certification] will avoid unnecessary expense for the parties and burdens for the court").

Plaintiffs also observe that it is often more protective of the interests of defendants to begin with the issue of class certification, because only a merits decision made after certification will bind all members of the class. But here, the defendant itself sought an early decision on the merits and, needless to say, does not suggest that it was prejudiced by winning on that basis. Nor do the named plaintiffs suggest any prejudice to their own interests traceable to the order in which the district court made its decision, rather than to the decision itself. The plaintiffs do contend that, due to the passage of time since the lawsuit began, when the suit is dismissed putative class members "will be left holding a time barred claim." Appellants' Br. at 22. That contention, however, is simply incorrect. The filing of a class action tolls the statute of limitations as to all asserted members of the class, and potential plaintiffs other than the three named in this case remain free to file their own suits against United. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983). They will, of course, face the problem of stare decisis (at least in this circuit), but even so their legal position is better than it would be if the merits decision had been made after class certification—in which case they would face the bar of res judicata.

In sum, in circumstances like these, where the merits of the plaintiffs' claims can be readily resolved on summary judgment, where the defendant seeks an early disposition of those claims, and where the plaintiffs are not prejudiced thereby, a district court does not abuse its discretion by resolving the merits before considering the question of class certification.

### III

■ We now turn to plaintiffs' challenge to the district court's grant of summary judgment in favor of United on the ground that plaintiffs' damage claims are barred by the doctrine of accord and satisfaction. We review the district court's decision to grant summary judgment de novo, and may affirm only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Borgo v. Goldin,* 204 F.3d 251, 254 (D.C.Cir.2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)).

Plaintiffs contend that (1) there were no valid accords and satisfactions in this case, and (2) even if there were, they should be rescinded on the grounds of mistake and/or misrepresentation. We consider each of these arguments below. Plaintiffs maintain that we should look to federal common law to decide these issues, while United urges us to look to the law of each individual passenger's domicile. That, however, is a dispute we need not resolve. Both sides agree that the Uniform Commercial Code (U.C.C.) and the Restatement (Second) of Contracts provide the applicable legal standards regardless of which law governs.[6] And neither side

---

**6.** All arguably relevant jurisdictions—Colorado (Curtin's and Wombacher's domicile), Georgia (Simmons' domicile and where his bag was reported missing), Illinois (United's principal place of business and where Wombacher's bag was reported missing), and Virginia (where Curtin's bag was reported missing)—have enacted U.C.C. § 3–311, which establishes the elements of accord and satisfaction. *See* COLO. REV. STAT. § 4–3–311; GA.

cites any case to suggest that the choice of law would effect a difference in the interpretation of the relevant U.C.C. or Restatement provisions.

## A

U.C.C. § 3–311 is entitled "Accord and Satisfaction by Use of Instrument." It provides, with exceptions not relevant here, that a claim is discharged if the person against whom the claim is asserted proves that: "(i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument." U.C.C. § 3–311(a). In addition, the instrument or an accompanying written communication must contain "a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." U.C.C. § 3–311(b).[7]

▄ The district court held that United's tender to each plaintiff of a check for $635, stamped with the legend that the payee's endorsement would constitute acceptance in "full and complete settlement of any and all claims which payee(s) may have against United Air Lines, Inc.," became an effective accord and satisfaction when the plaintiff signed and deposited the check. *See* U.C.C. § 3–311 cmts. 2, 3 (noting that an accord and satisfaction occurs when a seller deposits a check marked with the notation that it is in full satisfaction of a bill). On appeal, plaintiffs' challenge relies only upon the second U.C.C. requirement: that the amount of the claim be unliquidated. The Restatement defines an "unliquidated" obligation as one "that is uncertain or disputed in amount." § 74 cmt. c. Plaintiffs contend that United's correspondence conceded the carrier's liability for $635, and thereby showed that United regarded each claim as an undisputed, "liquidated claim for $635." Appellants' Br. at 10.

At oral argument, plaintiffs agreed that, at least if considered in isolation, the legend stamped on United's checks indicated United's view that the amount in question was not undisputed, since it stated that endorsement would constitute "settlement" of all claims. Nonetheless, plaintiffs contend that the clarity of the check legend was muddied by United's earlier letters. Those letters, plaintiffs assert, did not demonstrate an intention to compromise or settle, but instead flatly stated that United's liability was limited to $635—and thus rendered that amount a liquidated claim.

CODE ANN.§ 11–3–311; 810 ILL. COMP. STAT. ANN. 5/3–311; VA.CODE ANN. § 8.3A–311; *see also Curtin v. United Airlines, Inc.,* 120 F.Supp.2d 73, 76 n. 1 (finding that "all relevant jurisdictions rely on the U.C.C. § 3–311 and Restatement (Second) of Contracts § 281 definitions of accord and satisfaction, which codify the common law doctrine"). Courts also often look to the U.C.C. and Restatement when deciding questions of federal common law. *See, e.g., O'Neill v. United States,* 50 F.3d 677, 684 (9th Cir.1995) (relying on the U.C.C. as "a source of federal common law"); *FDIC v. Tennessee Wildcat Servs., Inc.,* 839 F.2d 251, 253 (6th Cir.1988) (same); *see also, e.g., Bowden v. United States,* 106 F.3d 433, 439 (D.C.Cir.1997) (explaining that the principles of the Restatement (Second) of Contracts are those "from which we would be inclined to fashion a federal common-law rule"); *Turner v. American Fed'n of Teachers Local 1565,* 138 F.3d 878, 882 (11th Cir.1998) (using the Restatement (Second) of Contracts as a source of federal common law).

7. The Restatement provides that "[a]n accord is a contract under which an obligee promises to accept a substituted performance in future satisfaction of the obligor's duty," § 281 cmt. a, and that "[p]erformance of the accord discharges the original duty," § 281(1). It further states that "[t]he enforceability of an accord is governed by the rules applicable to the enforceability of contracts in general." § 281 cmt. d.

This argument has two principal defects. First, the language of the letters that United sent to the plaintiffs is not materially different from the language on the checks. Like the checks, all three letters used the word "settlement" to describe the nature of the transaction between the parties.[8] Second, and more important, there is simply no question but that the parties did consider the amount of the claims to be in dispute, and hence that the $635 figure was far from "liquidated." The three plaintiffs clearly did not regard $635 as the amount they were owed, since their demands were for $921, $1855, and $1355. Nor did United signal agreement that the amount it owed was in fact $635. Rather, the carrier described $635 as the "limit[ ]" or "maximum" of its liability. That figure was calculated solely on the basis of the maximum weight of plaintiffs' luggage, and could have been reduced had United successfully challenged plaintiffs' estimates of the value of the bags' contents.[9]

There is only one way in which the $635 tendered by United could be considered evidence of a liquidated claim: if it were the law that a debtor automatically turns a debt (or a portion thereof) into a liquidated sum simply by offering a fixed amount in settlement. But if that were the law, there would be no such thing as an accord and satisfaction: every offer to settle a debt would liquidate the debt (at least to the extent of the offer), rendering every such offer ineligible under U.C.C. § 3–311(a)(ii). In this case, in order to discharge a claim, United paid more than it conceded owing and plaintiffs accepted less than they conceded being owed. That is more than sufficient to satisfy U.C.C. § 3–311(a)(ii),[10] and the fact that the amount accepted was the same as the amount tendered no more justifies calling plaintiffs' claims "liquidated" than it would those in any other dispute. Accordingly, we conclude that the tender, endorsement, and deposit of each check constituted a valid accord and satisfaction.[11]

## B

■ Finally, plaintiffs contend that, even if there were valid accords and satis-

---

8. *See* J.A. 35, 126 (letters to Curtin and Wombacher, stating that "claim settlement" is governed by the Warsaw Convention); J.A. 116 (letter to Simmons, stating that United's check for $635 "in settlement" will be mailed shortly).

9. Moreover, even "[a]n admission by the obligor that a minimum amount is due does not liquidate the claim even partially unless he is contractually bound to the admission." RESTATEMENT (SECOND) OF CONTRACTS § 74 cmt. c.

10. The U.C.C. does not require that the party against whom the claim is asserted offer an amount different from the amount it believes it owes. Rather, the party "against whom the claim is asserted may attempt an accord and satisfaction of the disputed claim by tendering a check to the claimant for some amount less than the full amount claimed by the claimant"—just as United did here. U.C.C. § 3–311 cmt. 1.

11. Plaintiffs also argue that the printed legend on United's checks demonstrated an absence of the good faith necessary for a valid accord and satisfaction. In support, they cite U.C.C. § 3–311 cmt. 4. That comment, however, refers only to "the practice of some business debtors in routinely printing full satisfaction language" on all or most of their checks, "whether or not there is any dispute with the creditor." In such cases, the comment states, "the claimant cannot be sure whether a tender in full satisfaction is or is not being made," and the practice may therefore "prevent an accord and satisfaction on the ground that the check was not tendered in good faith." Here, plaintiffs assert neither that United routinely printed the settlement legend on its checks, nor that they did not understand that tenders in full satisfaction were being made to them.

factions in this case, they should be rescinded on the grounds of mistake (unilateral or mutual) and/or misrepresentation.[12] For either doctrine to apply in this case, United's statements to plaintiffs must—at a minimum—have been "not in accord with the facts."[13] The point that was not in accord with the facts here, plaintiffs contend, was United's claim that its maximum liability was limited to $635, the product of $9.07 and the maximum weight of each plaintiff's lost bag. Plaintiffs argue that, because the Warsaw Convention's liability limit applied only if United's baggage checks recorded the bags' actual weights, and because United's checks concededly did not do so, United's claim that there was any limit to its liability at all (other than the fair value of the lost baggage) was in error.

Had United's letters been sent or its checks tendered or deposited after this court's decision in *Cruz*, plaintiffs might have an argument for their position. But all of those events transpired months before *Cruz* was issued,[14] and that subsequent decision can therefore play no role in the analysis. Instead, we must look to the state of the law at the time of the events in question. *See* RESTATEMENT (SECOND) OF CONTRACTS § 152 (providing that a mutual mistake capable of voiding a contract must be a mistake "at the time [the] contract was made"); *id.* § 153 (same with respect to unilateral mistake); *id.* § 159 cmt. c ("An assertion must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation."). At that time, the applicability of Article 22(2)'s liability limit in the absence of the recording of weights required by Article 4 was an unsettled question, and the existing law provided a more than adequate basis for United to conclude that its view was correct. *Cf. Moses–Ecco Co. v. Roscoe–Ajax Corp.*, 320 F.2d 685, 690 (D.C.Cir.1963) (holding that "a settlement payment, made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty").

When the accords and satisfactions in this case were reached, no Supreme Court or D.C. Circuit case had yet addressed the question subsequently decided in *Cruz*.[15] The only federal appellate court to have

---

**12.** *See* U.C.C. § 1–103 (providing that "the principles of law and equity, including ... the law relative to ... misrepresentation ... [and] mistake," shall "supplement" the provisions of the U.C.C.); RESTATEMENT (SECOND) OF CONTRACTS § 152 (entitled "When Mistake of Both Parties Makes a Contract Voidable"); *id.* § 153 (entitled "When Mistake of One Party Makes a Contract Voidable"); *id.* § 164 (entitled "When a Misrepresentation Makes a Contract Voidable").

**13.** *See* RESTATEMENT (SECOND) OF CONTRACTS § 151 ("A mistake is a belief that is not in accord with the facts."); *id.* § 159 ("A misrepresentation is an assertion that is not in accord with the facts."); *see also id.* § 151 cmt. b (stating that "[f]acts include law" and that "[a] party's erroneous belief with respect to the law ... may, therefore, come within these rules"); *id.* § 170 cmt. a ("A statement as to a matter of law is subject to the same rules as are other assertions.").

**14.** The letters to Curtin, Wombacher, and Simmons were mailed in February, May, and March of 1999, respectively. The plaintiffs deposited their checks between March and June of 1999. *See* J.A. 36, 119, 127. *Cruz* did not issue until October 12, 1999.

**15.** Plaintiffs call our attention to *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989), a case that did not involve the baggage liability limitation question at issue here. *Chan* held that Article 3 of the Warsaw Convention does not eliminate the Convention's limitation on damages for passenger injury or death when the carrier fails to provide adequate notice of the limitation on its passenger tickets. *Id.* at 135, 109 S.Ct. at 1684. Although the Court held that its decision in *Chan* was "governed by the text" of the Convention, *id.* at 134, 109 S.Ct. at 1683, it had no occasion to consider the text of Article 4 or its meaning.

considered the question, the Second Circuit, had held—consistent with United's view—that the liability limit of Article 22(2) continued to apply notwithstanding a failure to follow the requirements of Article 4.[16] Two of the three state appellate courts to have ruled had also decided in accord with United's position.[17] So, too, had many federal district judges,[18] including all that had ruled in this circuit,[19] although district courts had ruled the other way as well.[20] Moreover, the position expressed in United's letters was supported by advice to passengers published by the United States Department of Transportation. *See* Aviation Consumer Prot. Div., U.S. Dep't of Transp., Fly Rights: A Consumer Guide to Air Travel ch. 5 (10th rev. ed.1994) (stating that an airline may limit its liability under the Warsaw Convention to $9.07 per pound if, "[i]nstead of weighing [the] luggage, the carrier assumes that each of [the] bags weighs the maximum that it agrees to accept as checked baggage, usually 70 pounds," and noting that this "yields a liability limit of about $640 per bag").

The plaintiffs have cited no authority, in any jurisdiction, suggesting that when an issue of law is unsettled, a party makes a misrepresentation or mistake by reaching a conclusion that is well supported by existing law. Measuring United's statement against the state of the law at the relevant time, we reject plaintiffs' contention that the accords and satisfactions are void for misrepresentation or mistake.[21]

## IV

We find no abuse of discretion in the district court's decision to rule on United's motion for summary judgment without first permitting discovery or ruling on class certification. Nor do we discern any error in the district court's grant of summary judgment in United's favor. Accordingly, the judgment of the district court is

*Affirmed.*

16. *See Republic Nat'l Bank of N.Y. v. Eastern Airlines, Inc.*, 815 F.2d 232 (2d Cir.1987) (regarding commercial shippers).

17. *See Feeney v. America West Airlines*, 948 P.2d 110 (Colo.Ct.App.1997); *Hibbard v. Trans World Airlines, Inc.*, 70 Ohio App.3d 829, 592 N.E.2d 889 (1990). *But see Arkin v. New York Helicopter Corp.*, 149 A.D.2d 5, 544 N.Y.S.2d 343 (1989).

18. *See, e.g., Tseng v. El Al Israel Airlines, Ltd.*, 919 F.Supp. 155, 160 (S.D.N.Y.1996), *aff'd with respect to plaintiff's baggage claim*, 122 F.3d 99, 108 (2d Cir.1997), *rev'd on other grounds*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); *Gonzalez v. TACA Int'l Airlines*, No. 91–0175, 1992 WL 142399, 1992 U.S. Dist. LEXIS 9111 (E.D. La. June 17, 1992); *Klein v. Northwest Airlines*, No. C–90–3174, 1991 U.S. Dist. LEXIS 10614 (N.D. Cal. July 17, 1991); *Abbaa v. Pan Am. World Airways, Inc.*, 673 F.Supp. 991 (D. Minn.1987).

19. *See Cruz v. American Airlines, Inc.*, No. 96–02817, Mem. Op. at 16–17 (D.D.C. Oct. 24, 1997), *rev'd*, 193 F.3d 526 (D.C.Cir.1999); *Martin v. Pan Am. World Airways, Inc.*, 563 F.Supp. 135 (D.D.C.1983).

20. *See, e.g., Tchokponhove v. Air Afrique*, 953 F.Supp. 79 (S.D.N.Y.1996); *Siben v. American Airlines, Inc.*, 913 F.Supp. 271 (S.D.N.Y.1996); *Da Rosa v. Tap Air Portugal*, 796 F.Supp. 1508 (S.D.Fla.1992); *Vekris v. Peoples Express Airlines, Inc.*, 707 F.Supp. 675 (S.D.N.Y.1988); *Maghsoudi v. Pan Am. World Airways, Inc.*, 470 F.Supp. 1275 (D.Haw. 1979).

21. Because we conclude that there was no misrepresentation (or mistake), we need not address the "troublesome" issue of when one party's reliance on an assertion as to a matter of law by another party is justified. Restatement (Second) of Contracts § 164 cmt. d; *see id.* § 170.