IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-1189
════════════
 
DaimlerChrysler Corporation, 
Petitioner,
 
v.
 
Bill Inman, David Castro, 
and John Wilkins, Each Individually and on Behalf of All Others Similarly 
Situated, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 6, 
2005
 
 
            
Chief Justice Jefferson, 
joined by Justice O’Neill, Justice Green, and 
Justice Johnson, dissenting. 
 
In 
determining the propriety of a class action, the question is not whether the 
plaintiff or plaintiffs have stated a cause of action or will prevail on the 
merits, but rather whether the requirements of [the procedural rule governing 
class actions] are met.
                                                                                                                        

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (quoting 
Miller v. Mackey Int’l, 452 F.2d 424, 427 (5th Cir. 1971)).[1]
            
This case comes to us on appeal of a trial court’s order certifying a 
nationwide[2] class action against DaimlerChrysler. The 
trial court had previously denied DaimlerChrysler’s motion for summary judgment, 
which asserted that the class allegations failed to state a cause of action.[3] In the court of appeals, Chrysler—for the 
first time—asserted that the plaintiffs lacked standing to sue. Today, the Court 
agrees and, in doing so, improperly equates standing with the merits of the 
plaintiffs’ claim. Because this contravenes fundamental tenets of the standing 
doctrine, our rules of procedure, and the statute governing interlocutory 
appeals, I respectfully dissent.
I
Standing
 
            
The Court never reaches the choice-of-law issue, instead dismissing the 
entire action based on its conclusion that the plaintiffs lack standing. But 
standing “focuses on the party seeking to get his complaint before a . . . court 
and not on the issues he wishes to have adjudicated.” Simon v. E. Ky. Welfare 
Rights Org., 426 U.S. 26, 
38 (1976) (quoting Flast v. Cohen, 392 
U.S. 83, 99 (1968)). Today the Court 
inverts traditional standing doctrine, focusing not on the party but on the 
issues to be adjudicated. 
            
Putative class representatives, like any other plaintiffs, must 
demonstrate standing to sue. M.D. Anderson Cancer Ctr. v. Novak, 52 
S.W.3d 704, 710 (Tex. 2001). Here, each named plaintiff has 
alleged a personal interest in the case and a type of injury that is generally 
redressable under Texas law, which requires only “(1) a 
real controversy between the parties, that (2) will be actually determined by 
the judicial declaration sought.” Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 849 (Tex. 2005) (quoting Nootsie, Ltd. v. Williamson County Appraisal 
Dist., 925 S.W.2d 659, 662 (Tex. 1996)); see also Warth v. Seldin, 422 U.S. 490, 
501 (1975)(noting that “[f]or purposes of ruling on a motion to dismiss for want 
of standing, . . . reviewing courts must accept as true all material allegations 
of the complaint, and must construe the complaint in favor of the complaining 
party”); Brown v. Todd, 53 S.W.3d 297, 305 n.3 (Tex. 2001) (“Because 
standing is a component of subject matter jurisdiction, we consider [it] as we 
would a plea to the jurisdiction, construing the pleadings in favor of the 
plaintiff.”). As both of those conditions are satisfied here, the class 
representatives have standing to prosecute their claims.
            
As the Court notes, in most states (including Texas), the law on 
warranty claims based on unmanifested defects is 
unclear. ___ S.W.3d at ___ (citing Compaq Computer Corp. v. 
Lapray, 135 S.W.3d 657, 679 (Tex. 2004)). Absent a 
full record, in which the claim’s contours can be thoroughly vetted, I am not 
prepared to say the plaintiffs’ claims of economic injury are conclusively 
unsound. At least one court has distinguished between no-injury product 
liability claims, which are based in tort, and warranty claims based on unmanifested defects, which are contractually based. As the 
Fifth Circuit noted in a class-action case in which boat owners sought benefit 
of the bargain damages:
 
The key 
distinction between this case and a “no-injury” product liability suit is that 
the Coghlans’ claims are rooted in basic contract law 
rather than the law of product liability: the Coghlans 
assert they were promised one thing but were given a different, less valuable 
thing. The core allegation in a no-injury product liability class action is 
essentially the same as in a traditional products liability case: the defendant 
produced or sold a defective product and/or failed to warn of the product's 
dangers. The wrongful act in a no-injury products suit is thus the placing of a 
dangerous/defective product in the stream of commerce. In contrast, the wrongful 
act alleged by the Coghlans is Wellcraft's failure to uphold its end of their bargain and 
to deliver what was promised. The striking feature of a typical no-injury class 
is that the plaintiffs have either not yet experienced a malfunction because of 
the alleged defect or have experienced a malfunction but not been harmed by it. 
Therefore, the plaintiffs in a no-injury products liability case have not 
suffered any physical harm or out-of-pocket economic loss. Here, the damages 
sought by the Coghlans are not rooted in the alleged 
defect of the product as such, but in the fact that they did not receive the 
benefit of their bargain. 
 
 
Coghlan v. Wellcraft 
Marine Corp., 240 F.3d 449, 455 n.4 (5th Cir. 2001). 
            
The Fifth Circuit also noted that “the determination that there has been 
no injury in [cases like this] must be an evidentiary one.” Id. at 455 
(holding that district court acted prematurely by dismissing case on the 
pleadings). Most courts recognize that the failure to state a cause of action is 
best addressed outside the context of class certification. Indeed, one court has 
noted that “the substantive question of whether the implied warranty of 
merchantability protects against an unanticipated diminution in secondary market 
values” is better reserved for “another, more appropriate time — i.e., outside 
the context of rulings on Rule 23 motions for class certification.” Carlson 
v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989)[4]; see also Briehl v. Gen. Motors Corp., 172 F.3d 623, 628 n.8 (8th 
Cir. 1999) (noting that, in evaluating the trial court’s ruling on a motion to 
dismiss for failure to state a claim, class certification decisions are 
“singularly unhelpful since none of the cases address[] the substantive question 
of whether a plaintiff claiming only lost resale value damages states a valid 
claim” and noting that most courts “explicitly reserve[] the question for a 
decision outside the context of a Rule 23 motion to certify a class”) (citations 
and quotations omitted). Not only that, but because Rule 42, like its federal 
counterpart, requires certification “at an early practicable time,” Tex. R. Civ. P. 42(c)(1)(A); see 
also Fed. R. Civ. P. 
23(c)(1)(A), trial courts will generally face class certification decisions 
before a case is ripe for summary judgment. See Curtin v. United Airlines, 
Inc., 275 F.3d 88, 92 (D.C. Cir. 2001); Cowen v. Bank United of Tex., 
FSB, 70 F.3d 937, 941 (7th Cir. 1995); see also 7B Charles Alan Wright, Arthur R. Miller & 
Mary Kay Kane, Federal Practice and Procedure (3d ed. 2005) § 1798 
(noting that, in class action cases, trial courts should be “very careful” in 
ruling on early summary judgment motions “to make certain that all the available 
evidence is before [them]”). 
            
The Court notes—accurately—that two similar class actions have been 
brought in other states “without success.” ___ S.W.3d at ___. But that is only 
part of the story. While both cases involved putative class actions involving 
the Gen-3 buckles, neither was decided on the basis of standing. The Quacchia court held that common issues did not 
predominate, and thus the trial court did not abuse its discretion in refusing 
to certify the class. Quacchia v. DaimlerChrysler 
Corp., 19 Cal. Rptr. 3d 508, 
515 (Cal. Ct. App. 2004). Similarly, in Hiller, the trial court found 
that class certification was inappropriate, as class members had not 
demonstrated predominance. Hiller v. DaimlerChrysler Corp., No. 02-681, 
2007 Mass. 
Super. LEXIS 442, 2007 WL 3260199, *4-5 (Mass. Super. Ct. Sept. 25, 2007). But neither court held, 
as this Court does, that trial courts lacked subject matter jurisdiction over 
the plaintiffs’ claims. Indeed, in concluding that a plaintiff suing for 
allegedly defective Gen-3 buckles stated a cognizable claim, a Florida court noted: 
 
This case 
turns on a relatively simple question, at least as to damages — Is a car with 
defective seatbelt buckles worth less than a car with operational seatbelt 
buckles? Common sense indicates that it is, but, at this stage of the case, we 
need not decide that issue. Rather, we only determine that Collins is entitled 
to go forward with her case.
 
 
Collins v. 
DaimlerChrysler Corp., 894 So.2d 988, 989-90 (
Fla. 
Dist. Ct. App. 2004) (holding that Florida consumer protection statute did not 
require that “a defect manifest itself by failing to operate in an emergency or 
by causing injury”—actual injury in form of insufficient product value was 
enough, and whether “allegations have merit remain[ed] 
to be decided”). 
            
The Court relies in part on Rivera v. Wyeth-Ayerst Labs., 283 F.3d 
315 (5th Cir. 2002). But the Fifth Circuit’s recent decision in Cole v. 
General Motors Corp., 484 F.3d 717 (5th Cir. 2007), shows why Rivera 
is inapposite. In Cole, Cadillac DeVille owners 
sued General Motors, alleging that the DeVilles had a 
defect that caused the airbags to deploy inadvertently and that GM had failed to 
repair or replace the airbags within a reasonable time. None of the class 
plaintiffs had actually experienced an inadvertent deployment, and GM (which had 
previously recalled the vehicles) challenged their standing to sue. Cole, 
484 F.3d at 719-20. The Fifth Circuit, distinguishing Rivera, concluded 
that the plaintiffs had standing to pursue their claims:
 
In 
Rivera, purchasers of a prescription drug sought recovery of economic 
damages after learning that the manufacturer had withdrawn the drug from the 
market because the drug had caused liver damage to other patients. We concluded 
that the Rivera plaintiffs lacked standing because they described their 
claim as emanating from the drug manufacturer’s failure to warn and sale of a 
defective product, but the plaintiffs did not claim that the drug had caused 
them any physical or emotional injury. Although the plaintiffs quantified their 
injury in terms of economic damages, we concluded that merely asking for 
economic damages failed to establish an injury in fact because the plaintiffs 
never defined the source of their economic injury. The plaintiffs could not 
assert benefit-of-the-bargain damages because they had no contract with the 
manufacturer. Due to these factors, we determined that the injuries that the 
plaintiffs alleged were suffered not by them, but rather, by the non-party 
plaintiffs suffering liver damage. And we referred to the Rivera 
plaintiffs’ claim as a “no-injury products liability” suit.
 
            
Rivera is distinguishable from the instant case. In Rivera, 
the plaintiffs sought damages for potential physical injuries; because they 
never suffered actual physical injuries, they could only allege injuries that 
were suffered by non-parties. The Rivera plaintiffs did not assert 
economic harm emanating from anything other than potential physical harm. Here, 
although plaintiffs do not assert physical injuries (either their own or those 
of other persons), they do assert their own actual economic injuries. Plaintiffs 
allege that each plaintiff suffered economic injury at the moment she purchased 
a DeVille because each DeVille was defective. Plaintiffs further allege that each 
plaintiff suffered economic injury arising from GM’s unreasonable delay in 
replacing their defective [airbags]. Plaintiffs seek recovery for their actual 
economic harm (e.g., overpayment, loss in value, or loss of usefulness) 
emanating from the loss of their benefit of the bargain. Notably in this case, 
plaintiffs may bring claims under a contract theory based on the express and 
implied warranties they allege. Whether recovery for such a claim is 
permitted under governing law is a separate question; it is sufficient for 
standing purposes that the plaintiffs seek recovery for an economic harm that 
they allege they have suffered. See Parker v. District of 
Columbia, 478 F.3d 370, 377(D.C. Cir. 2007) (“The Supreme Court has made 
clear that when considering whether a plaintiff has Article III standing, a 
federal court must assume arguendo the merits 
of his or her legal claim.”) (citing Warth 
v. Seldin, 422 U.S. 490, 501-02 
(1975)). We therefore conclude that plaintiffs have established a concrete 
injury in fact and have standing to pursue this class action. 
 
Id. at 722-23 
(emphasis added) (citations omitted).[5] 
            
This Court’s attempt to distinguish Cole reveals the extent to 
which it has misread that case. In its discussion of Cole and 
Rivera, the Court asserts that:
 
An 
important difference between these two cases is that the Cole plaintiffs 
alleged a defect that would cause GM’s side-impact air bags to deploy by itself 
unexpectedly during normal operation, something GM conceded in its voluntary 
recall, while the Rivera plaintiffs alleged a defect in medication which 
had caused injury only when taken by someone contrary to Wyeth’s instructions. 
In Cole, injury was a matter of time; in Rivera, it might never 
happen. The air bags in Cole’s vehicle might deploy improperly regardless of 
what she did, just as they might in the other vehicles in which they were 
installed. Taking Duract had not hurt Rivera, and 
there was almost no chance that the defect she alleged in the drug ever would 
injure her, given that she was fully aware of the restrictions on its use. Any 
possibility of injury to the plaintiffs in the present case is even more remote 
than it was in Rivera.
 
 
 __S.W.3d at__. 
Based on this description, one would think that Cole turned on the 
likelihood of personal injury to the plaintiffs. As seen above, however, the 
Cole panel distinguished Rivera on very different grounds. The 
Fifth Circuit found that the plaintiffs in Cole had standing not 
because unexpected air bag deployment was inevitable[6] or otherwise more likely to cause harm to 
the plaintiffs than the drug in Rivera, but because the plaintiffs 
alleged that the defect—and GM’s failure to cure it in a reasonable 
time—deprived them of the benefit of their bargain. The plaintiffs here, like 
those in Cole, have made a claim for economic damages—replacement cost 
and loss of use—arising from, among other things, an alleged breach of warranty. 
This is sufficient to establish the plaintiffs’ standing, Cole, 484 F.3d 
at 722-23, and neither the Court’s dim view of their ability to prove a defect 
nor its disdain for their bid to adjudicate the rights of “ten million vehicle 
owners and lessees across the nation” in Nueces County deprives them of it. 
__S.W.3d at__.
            
Similarly, the Court’s analogy to M.D. Anderson misses the mark. 
In that case, we held that a plaintiff who was never defrauded lacked standing 
to sue on behalf of those who were. See M.D. Anderson Cancer Ctr. v. 
Novak, 52 S.W.3d 704, 707-11 (Tex. 2001). In this case, by contrast, each of 
the plaintiffs purchased a vehicle equipped with Gen-3 buckles, and they allege 
economic damages equal to the cost of replacing the defective buckles. Their 
injury—as alleged—is complete.[7] Perhaps M.D. Anderson would be 
applicable if the plaintiffs did not own the vehicles but were suing on behalf 
of those who did, but that’s not the case here. Taking their pleadings as true, 
as we must,[8] it is the plaintiffs—not some unrelated 
third parties—who have suffered an economic injury. For standing purposes, they 
need not show that the seat belts “fail[ed] to operate 
in an emergency or . . . caus[ed] injury.” Collins, 894 So.2d at 990. Their injury, 
as alleged, is manifest today, because the economic value of the product they 
purchased is not as warranted.[9] 
            
The Court correctly notes that standing is a prerequisite to subject 
matter jurisdiction. ___ S.W.3d ___. It may be raised not only by a plea to the 
jurisdiction, but by any number of procedural methods, including summary 
judgment. Bland I.S.D. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). This 
rule facilitates review of subject matter jurisdiction, which is so important 
that it can be raised for the first time on appeal. It makes little sense, 
however, to stretch this reasoning to permit review of ordinary merits-based 
issues that are raised in a motion for summary judgment.[10] We have never before held that any time 
a plaintiff’s claims fail as a matter of law, the trial court is deprived of 
jurisdiction.[11]
            
Moreover, crafting new standing rules creates a host of problems, not the 
least of which involves collateral attacks on judgments. Without standing, a 
court lacks subject matter jurisdiction to hear the case. Id. at 553-54; Tex. Ass'n 
of Bus. v. Tex. Air Control Bd., 852 
S.W.2d 440, 443 (Tex. 1993). Because “a judgment will never be 
considered final if the court lacked subject-matter jurisdiction,” Dubai 
Petroleum Co. v. Kazi, 12 S.W.3d 71, 76 (Tex. 
2000), the Court’s holding “opens the way to making judgments vulnerable to 
delayed attack for a variety of irregularities that perhaps better ought to be 
sealed in a judgment.” Restatement 
(Second) of Judgments § 12 cmt. b (1982); 
see also Dubai, 12 S.W.3d at 76. Additionally, by 
holding that standing requires the plaintiff to establish the validity of its 
claim, and because standing may be raised for the first time on appeal, a 
class-action defendant could—on interlocutory appeal of a certification 
order—seek dispositive rulings on all of the plaintiffs’ claims, even without 
first asking the trial court to determine the merits of the claims and absent 
any sort of evidentiary record. Defendants who lose at trial may now, under the 
guise of standing, raise affirmative defenses that were never pleaded in, or 
considered by, the trial court. 
            
We have recognized that “[i]f . . . no class 
member can state a viable claim, dispositive issues should be resolved by the 
trial court before certification is considered.” State Farm Mut. Auto. Ins. Co. v. Lopez, 156 S.W.3d 550, 557 
(Tex. 2004). 
Here the trial court did precisely that, by denying DaimlerChrysler’s summary 
judgment motion, which alleged that the class members had not suffered damages, 
an essential element of their claims. Even if DaimlerChrysler were entitled to 
summary judgment on the grounds asserted, the trial court’s denial of the 
motion, a patently interlocutory ruling, is referable to the merits rather than 
the plaintiffs’ standing to assert their claims. The Legislature in 2003 
enlarged our interlocutory appellate jurisdiction in class action cases, by 
(among other things) broadening our conflicts jurisdiction, but it did not 
confer appellate jurisdiction over all interlocutory orders. Instead, the 
Legislature confined that jurisdiction in class actions to specific cases. 
See, e.g., Tex. Civ. Prac. & 
Rem. Code § 26.051 (permitting interlocutory appellate review—“as part of 
an appeal of the order certifying the class action”—of pleas to the jurisdiction 
in class action cases in which it is alleged that a state agency has exclusive 
or interlocutory jurisdiction). Nor did this Court enact rules governing 
dispositive motions in class action cases as part of the Legislature’s mandate 
that we “adopt rules to provide for the fair and efficient resolution of class 
actions.” Id. § 26.001(a); see also 
Order of Supreme Court of Texas Adopting Amendments to Rules of Civil 
Procedure (Oct. 9, 2003, eff. Jan. 1, 2004) (available at http://www.supreme.courts.state.tx.us/MiscDocket/03/03916000.PDF). 

            
We require that trial courts, in certifying or denying certification, 
comply with the detailed requirements of Rule 42. That rule requires, among 
other things, that the court delineate the elements of each claim or defense 
asserted in the pleadings; any issues of law or fact common to the class 
members; any issues affecting only individual class members; those issues that 
will be the object of most of the efforts of the litigants and the court; other 
available methods of adjudication; why common issues do or do not predominate; 
why a class action is or is not superior; and how class and individual claims 
will be tried in a manageable, time efficient manner. Tex. R. Civ. P. 42(c)(1)(D). Moreover, 
trial courts must conduct a “rigorous analysis” before ruling on class 
certification to determine “whether all prerequisites to class certification 
have been met.” Bernal, 22 S.W.3d at 435. 
            
But we have never before held that if class representatives cannot prove 
their case at the class-certification stage, the trial court lacks jurisdiction. 
While “[t]he court may require plaintiff to supplement the pleadings with 
outside material in order to determine whether to certify [a class action]. . . 
. this does not mean that the litigant bringing the action as a representative 
must establish the merits of the case before a preliminary determination of the 
class-action question can be made.” 7B 
Wright, Miller and Kane, Federal Practice and Procedure § 1798. Indeed 
“although a preliminary evidentiary hearing may be utilized [prior to class 
certification], that hearing is directed toward examining the underlying facts 
to determine whether they are susceptible to common proof and is not to 
determine the probability of success on the merits.” Id. The class 
action is “a procedural device intended to advance judicial economy by trying 
claims together that lend themselves to collective treatment,” but “[p]rocedural devices may ‘not be construed to enlarge or 
diminish any substantive rights or obligations of any parties to any civil 
action.’” Henry Schein, Inc. v. Stromboe, 102 
S.W.3d 675, 693 (Tex. 2002) (quoting Tex. R. Civ. P. 815). 
            
We have followed the United States Supreme Court’s directive in Eisen, holding that “[d]eciding the merits of the suit in order to determine the 
scope of the class or its maintainability as a class action is not appropriate.” 
Intratex Gas Co. v. Beeson, 22 S.W.3d 
398, 404 (Tex. 2000) (citing Eisen, 417 U.S. at 177). Prior to Eisen, the Fifth Circuit held that, in determining 
whether a purchaser's action against an issuer for alleged violations of the 
securities law could be maintained as a class action, the trial court improperly 
considered whether the petition stated a cause of action or whether the 
purchaser would succeed on the merits. The Fifth Circuit vacated the order 
denying class-action status and remanded the case, stating: 
 
The 
determination whether there is a proper class does not depend on the existence 
of a cause of action. A suit may be a proper class action, conforming to Rule 
23, and still be dismissed for failure to state a cause of action. Rule 23 
delineates the scope of inquiry to be exercised by a district judge in passing 
on a class action motion. Nothing in that Rule indicates the necessity or the 
propriety of an inquiry into the merits. Indeed, there is absolutely no support 
in the history of Rule 23 or legal precedent for turning a motion under Rule 23 
into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by 
allowing the district judge to evaluate the possible merit of the plaintiff's 
claims at this stage of the proceedings. Failure to state a cause of action is 
entirely distinct from failure to state a class action. 
 
 
Miller v. 
Mackey Int'l, Inc., 452 F.2d 424, 427-28 (5th Cir. 1971) (citations 
omitted). Even if we were to change course and disavow Eisen, the better practice would be to do so through 
our rulemaking procedure. Several commentators have suggested just such a 
solution with regard to the Federal Rules of Civil Procedure. See, e.g., 
Robert G. Bone and David S. Evans, 
Class Certification and the Substantive Merits, 51 Duke L.J. 1251, 1254-55 
(2002)(submitting that Fed. R. Civ. P. 23 be amended to require preliminary 
merits-related inquiries in class-action cases); Geoffrey C. Hazard, Jr., 
Class Certification Based on Merits of the Claims, 69 Tenn. L. Rev. 1, 4 
(2001) (proposing amendment to Rule 23 to permit adjudication of the merits of 
class claims prior to full-fledged certification); Bartlett H. McGuire, The 
Death Knell for Eisen: Why the Class Action Analysis 
Should Include an Assessment of the Merits, 168 F.R.D. 366 (1996) 
(advocating amendment to Rule 23 so that an assessment of the merits would be 
included in the Rule 23(b)(3) analysis of the superiority of class action 
treatment).[12] After all, Eisen was based in part on the absence of any 
provision in the Federal Rules of Civil Procedure that would “give[] a court any 
authority to conduct a preliminary inquiry into the merits of a suit in order to 
determine whether it may be maintained as a class action.” Eisen, 417 U.S. at 177. But even such a reform 
would not go as far as the Court does here—stripping trial courts of 
jurisdiction if a claim lacks merit. Because the plaintiffs have standing, the 
trial court has subject matter jurisdiction, and the Court errs in concluding 
otherwise. 
II
Choice of Law
            
A threshold question in any appellate review of an order certifying a 
multistate class action must be an analysis of whose law governs the class 
claims. See Compaq, 135 S.W.3d at 672. In this case, the trial court 
certified a multistate class but did not perform a choice-of-law analysis, 
concluding that it was unnecessary.[13] Noting this deficiency, the court of 
appeals held that “the trial court still ha[d] significant work to do on 
choice-of-law issues” and that our decision in Henry Schein “compel[led] 
reversal” of the class certification order on that basis. 121 S.W.3d at 886. 
After the court of appeals issued its judgment in this case, we decided 
Compaq, in which we mandated a detailed choice-of-law analysis in 
multistate class actions like this one, and we held that the lower courts erred 
by failing to conduct such an analysis. Compaq, 135 S.W.3d at 673 (noting 
that the lower “courts never assessed the substance of other states' laws but 
instead concluded that the theory was sound under Texas law. A proper 
review would have analyzed the relevant law of each state and the variations 
among states.”). 
            
We have recognized that “[i]n the context of a 
nationwide class action, the determination of the applicable substantive law is 
of paramount importance. If the court does not know which states' laws must be 
applied, it cannot determine whether variations in the applicable laws would 
defeat predominance in a [Rule 42](b)(3) class action . . . .” Id. at 
672. Moreover, “[i]f the laws of fifty-one 
jurisdictions apply in [a] class action, the variations in the laws of the 
states and District of Columbia ‘may swamp any common issues and defeat 
predominance.’” Id. (quoting Castano 
v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996)). 
            
It is settled that in reviewing a class certification order, we must 
evaluate “‘the claims, defenses, relevant facts, and applicable substantive 
law.’” Bernal, 22 S.W.3d at 435 (quoting Castano, 84 F.3d at 744). In so doing, we have 
required “trial courts [to] abandon the practice of postponing choice-of-law 
questions until after certification, as courts can hardly evaluate the 
claims, defenses, or applicable law without knowing what that law is.” 
Compaq, 135 S.W.3d at 672 (citing Tracker Marine, L.P. v. Ogle, 
108 S.W.3d 349, 351-52 (Tex. App.—Houston [14th Dist.] 2003, no pet.)) (emphasis 
added); see also Spence v. Glock, 227 F.3d 308, 
313 (5th Cir. 2000) (holding that "the district court is required to know which 
law will apply before it makes its predominance determination"); Citizens 
Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 441 
(Tex. 2007). In light of our recent cases on this issue, the court of appeals 
correctly held that the case must be remanded to the trial court for further 
proceedings. 
III
Conclusion
 
            
Proposals to modify class action procedure present serious questions of 
policy. Standing is different. It implicates a court’s fundamental power to 
adjudicate a claim, rather than an assessment of whether the claim will 
ultimately succeed. Today, the Court conducts an extraordinary and unworkable 
reading of both pleading and precedent to conclude that the plaintiffs “lack[s] 
standing because [their] claim of injury is too slight for a court to afford 
redress.” ___ S.W.3d at ___. We have never before stretched the doctrine this 
far. The Court’s opinion reveals a visceral distaste for class actions, see 
Mejdrech v. Met-Coil Sys. Corp., 319 F.3d 910, 912 
(7th Cir. 2003), but that distaste should not upend our substantive law of 
standing and subject matter jurisdiction which, even more than the right of 
trial by jury, is fundamental to our system of justice. I would affirm the court 
of appeals’ judgment. 
 
__________________
Wallace B. 
Jefferson
Chief Justice 

 
OPINION 
DELIVERED:     February 1, 2008                                              
         







[1] 
Texas Rule of Civil Procedure 42 is patterned after Federal Rule of Civil 
Procedure 23; consequently, federal decisions and authorities interpreting 
current federal class action requirements are persuasive authority.  Sw. 
Ref. Co., Inc. v. Bernal, 22 S.W.3d 425, 433 (Tex. 2000) (citations 
omitted).

[2] 
In fact, the case is nearly nationwide, encompassing forty-eight states.  
California and Nevada residents were excluded from the proposed class 
definition.

[3] 
The motion nowhere asserts that the trial court lacked jurisdiction based on 
standing and seeks not dismissal, but a take-nothing judgment.  Rather, 
DaimlerChrysler moved for summary judgment on the pleadings, alleging that the 
plaintiffs sustained no damages, an essential element of each claim, and that 
DaimlerChrysler was therefore entitled to judgment on the merits.  
DaimlerChrysler later supplemented its motion with excerpts from the class 
representatives’ depositions.  The trial court denied the motion. 


[4] 
That court noted:
 
In Walsh v. Ford Motor Co., 106 F.R.D. 378 
(D.D.C. 1985), for example, the trial court certified an “all owners” class of 
plaintiffs, notwithstanding the defendant's protestation that many of the class 
members' cars had “performed as warranted and therefore [were] 
merchantable.”  Id. at 396.  The court specifically noted, 
however, that it was certifying the class solely on the basis of the 
“commonality” of the prospective members' interests, and that it was not 
determining separately whether the plaintiffs had stated a “viable” cause of 
action for breach of the implied warranty of merchantability. Id. at 
397.  Essentially the same can be said for each of the remaining cases on 
which the plaintiffs principally rely.  See In re Cadillac V8-6-4 Class 
Action, 93 N.J. 412, 461 A.2d 736, 743 (1983) (approving certification of 
“all owners” class where plaintiffs charged breach of implied warranty of 
merchantability on account of “common defect”; court holds that allegation of 
“loss-of-bargain” damages is sufficient to state cause of action, but relies on 
cases where such loss occurred as result of manifest defects in 
plaintiffs' cars); Landesman v. 
General Motors Corp., 356 N.E.2d 105, 107-08, 42 Ill.App.3d 363, 1 Ill. Dec. 
105, 107-08 (1st Dist. 1976) (court certified class of plaintiffs claiming 
damages partly attributable to diminished resale value, but specifically 
declined to decide question of whether allegations supported viable cause of 
action); Anthony v. General Motors Corp., 33 Cal.App.3d 699, 109 Cal.Rptr. 254 (2d Dist. 1973) (“all owners” class 
certification; no discussion of viability of underlying cause of action). 

 
Carlson, 883 
F.2d at 297.

[5]  Ultimately, the court concluded that 
the district court abused its discretion in certifying the class, as the 
plaintiffs “failed to adequately address, much less ‘extensively analyze,’ the 
variations in state law . . . and the obstacles they present to 
predominance.”  Cole, 484 F.3d at 730.  

[6] 
It is far from clear that injury to the Cole plaintiffs was merely “a 
matter of time.”  In that case, GM indicated that “it had received 306 
reports of inadvertent deployment out of approximately 224,000 affected 
vehicles.” Cole, 484 F.3d at 719.  Further, “[a]ccording to GM . . . the likelihood of inadvertent 
deployment decreased significantly over time.”  Id. at 720 
n.2.   

[7] 
The court of appeals recognized this, noting that “‘[r]isk of injury’ [was] an inaccurate characterization” of the 
alleged harm.  121 S.W.3d at 879.  Rather, the court noted that 
“[e]ach plaintiff claim[ed] injury in the form of 
insufficient product value” and “[o]n the basis of these allegations, each 
plaintiff claims a concrete and particularized injury in fact sufficient to 
confer standing to sue.”  Id. 
 

[8] 
Brown, 53 S.W.3d at 305 n.3. 

[9] 
The Court asserts that the plaintiffs “do not contend that the Gen-3 buckles 
made their vehicles worth less than they paid for them.”  While the 
plaintiffs may not use these exact words, they do allege concrete economic harm 
stemming from breach of express and implied warranties.  See Tex. Bus. & Comm. Code § 2.714(b); 
Nobility Homes of Tex., Inc. v. Shivers, 557 S.W.2d 77, 78 n.1 (Tex. 
1977) (stating that “direct economic loss may be ‘out of pocket’—the difference 
in value between what is given and received—or ‘loss of bargain’—the difference 
between the value of what is received and its value as represented.  Direct 
economic loss also may be measured by costs of replacement and repair.”) 
(citations omitted).
 

[10] The Court states, in response to the 
argument that it is incorrectly considering the merits in determining standing, 
that “[w]e do not render judgment that the plaintiffs take nothing, as we would 
if their claims failed on the merits; we dismiss the case for want of 
jurisdiction.”  ___S.W.3d___.  This is quite true, but utterly 
non-responsive.  The troubling part of the Court’s opinion is, of course, 
not the disposition in and of itself, but how it was reached.
 
 

[11] Indeed, standing is typically challenged in 
a plea to the jurisdiction, which is a “dilatory plea, the purpose of which is 
to defeat a cause of action without regard to whether the claims asserted 
have merit.”  Bland, 34 S.W.3d at 554 (emphasis 
added).

[12] The Advisory Committee on the (federal) 
Civil Rules “also considered, but did not propose for formal review, a new 
provision of Rule 23(b)(3) that would have required a 
preliminary hearing on the merits prior to certification.”  Deborah R. Hensler et al., Class Action 
Dilemmas:  Pursuing Public Goals for Private Gain 500 n.2 
(2000).  That provision “encountered opposition from both plaintiff and 
defense bars.”  Id.  As one commentator has noted:
 
Defendants were torn between the attraction of drawing 
trial judges’ attention to the merits of proposed class actions and the 
possibility that such an early merits determination would simply provide more 
opportunity for adversarial procedure at a time when the record had not yet been 
sufficiently developed to support a sound judicial assessment.  Defendants’ 
disagreement among themselves on the issue of a preliminary merits determination 
subsequently led the Advisory Committee to abandon this proposal.
 
Id. at 44 
n.103.
 

[13] The class certification order stated that 
“[a] class certification order need not address choice of law. . . . In the 
absence of a proper choice of law motion, the Court will continue to presume, as 
it is entitled to presume, that the law of other jurisdictions is the same as 
Texas law.”